STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-406

SAM A. DAIGLE AND THERESA M. DAIGLE

VERSUS

TRINITY UNITED MORTGAGE, L.L.C. AND JOE DIEZ

**********

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-16162
HONORABLE H. WARD FONTENOT, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Glenn B. Gremillion, and
Elizabeth A. Pickett, Judges.

AFFIRMED.

Anthony James Hebert
Attorney at Law
1306 Sampson St., Suite B
Westlake, LA 70669
(337) 439-1177
Counsel for Defendant-Appellant:
Trinity United Mortgage, L.L.C.

Marvin Gros
Tonya B. Clark
Law Office of Marvin Gros
P. O. Box 1040
Donaldsonville, LA 70346
(225) 473-7868
Counsel for Defendant-Appellant:
Trinity United Mortgage, L.L.C.

**P. Jody Lavergne**
**J. Chris Guillet**
**Scofield, Gerard, Veron, Singletary, & Pohorelsky**
**P. O. Drawer 3028**
**Lake Charles, LA 70602**
**(337) 433-9436**
**Counsel for Plaintiffs-Appellees:**
**Sam A. Daigle**
**Theresa M. Daigle**

**Pickett**, Judge.

FACTS

Sam and Theresa Daigle decided to build a home in Cameron Parish and purchased a lot for that purpose. They contacted Trinity United Mortgage Company, L.L.C., in Baton Rouge to secure financing for their home. They spoke with Joe Diez, a loan originator for Trinity, who discussed the terms of the loan and the documents and information he would need to process the loan. On May 22, 2001, the Daigles traveled to a hotel in Lafayette and met with Cecilia, an employee of Trinity, where they signed a Truth in Lending Disclosure Statement and a Good Faith Estimate. The Daigles testified that for the next two months they heard regularly from Cecilia or Diez regarding the progress of their loan application. The Daigles met with Diez and a closing attorney for Trinity on July 18, 2001, at a McDonald's in Jennings. At that time they signed a construction loan that Diez had arranged through Union Planters Bank. Trinity received an origination fee in this transaction. According to the Daigles, Diez told them at this meeting that he had secured a permanent lender for them when construction of the home was complete, that their monthly notes would be no more than $700.00, and that they should pay the interest on the interim construction loan, however, it wasn't required because any interest due on the construction loan would be folded into the permanent loan at the time they closed on the permanent loan.

The Daigles began construction on their home soon thereafter. Construction was completed and they moved in on November 1, 2001. They attempted to contact Diez at Trinity's office, but were repeatedly told that he was unavailable and would get back to them. In fact, Diez was no longer an agent of Trinity. He had left Trinity

1

a few days after the July 18, 2001, meeting with the Daigles. The uncontroverted testimony was that neither Trinity nor Diez disclosed to the Daigles that he was no longer a Trinity agent. The Daigles continued to believe they were dealing with Trinity.

The Daigles paid the interest on the construction loan while their home was being built. Mrs. Daigle contacted Union Planters to get an update on the status of their loan. She was told by an employee that they could give her no information because Trinity was not returning their calls. Based on the earlier representations by Diez that any interest owed could be folded into their permanent loan, the Daigles stopped making interest payments to Union Planters.

Although they never spoke to Diez on the phone, during the third week of November he showed up at the Daigle residence. The Daigles testified that they believed they were signing the paperwork to close on the permanent loan with Trinity. In fact, Diez had them sign a new application with his new company, First United Mortgage. Diez assured them that the interest payments on the construction loan and a $17,000.00 invoice due to Stine Lumber that was not covered by the construction loan would be covered by the permanent loan.

Ultimately, Union Planters sued the Daigles because of their failure to make the interest payments on the construction loan. When this suit was filed against them they realized they had serious problems with the financing of their home. The Daigles were forced to borrow money from private individuals to pay Union Planters to keep the suit from proceeding. Through their own efforts, they later obtained permanent financing through another source.

The Daigles filed this suit against Trinity and Diez to recover interim loan interest on the construction loan, attorney's fees they expended to defend themselves in the Union Planters suit, and emotional damages. They also sought attorney's fees in the instant action for alleged violations of the Louisiana Unfair Trade Practices Act (LUTPA). Following a two day bench trial, the trial court, in written reasons dated October 23, 2003, found that Joe Diez had breached a duty to the Daigles to secure permanent funding for their home in a timely manner and that Trinity was liable for Diez's acts under the doctrine of *respondeat superior*. The trial court awarded damages in the amount of $6,067.33 for interim loan interest, $2,500.00 for attorney's fees in the Union Planters Suit, and general damages for mental anguish to Mrs. Daigle in the amount of $10,000.00 and Mr. Daigle in the amount of $7,500.00. He found Trinity and Diez to be liable *in solido* for the Daigles' damages. The trial court denied attorney's fees in this action, finding the LUTPA inapplicable to this case. Judgment was signed on October 30, 2003. The trial court denied Trinity's Motion for a New Trial on December 17, 2003. Trinity has filed a suspensive appeal from this judgment. Joe Diez has not filed an appeal and this judgment is final as to him. The Daigles have answered the appeal seeking attorney's fees pursuant to the LUTPA.

## ASSIGNMENTS OF ERROR

The appellant, Trinity United Mortgage, alleges three assignments of error:

1) The trial court erred in finding Trinity United Mortgage, L.L.C. liable for plaintiff-appellees' damages as a matter of law; in that, the lower court failed to take into consideration testimony provided by an independent witness that clearly relieves Trinity from any duty to provide permanent financing to plaintiffs.

2) The lower court erred in failing to attribute contributory negligence against the plaintiff-appellees in their failure to maintain the required

3

qualifications that are the industry's standard when securing permanent financing; or in the alternative reduce the mental anguish awards accordingly, as they are excessive.

3) The trial court erred in denying Defendant-Appellees [sic] Exception of No Cause of Action pursuant to the provisions set forth in La.R.S. 51:1913, La.R.S. 51:1194 and La.R.S. 51:1405; as well as denying Defendant-Appellees [sic] Exception of No Cause of Action based upon the doctrine of responde[a]t superior.

The appellees, Sam and Theresa Daigle, answering the appeal, allege one assignment of error:

1) The trial court erred in ruling that the Louisiana Unfair Trade Practices Act does not protect home buyers from misrepresentations made by a loan originator and that the buyers are therefore not entitled to recover attorney's fees under the Act, La.R.S.51:4109.

## DISCUSSION

In its first assignment of error Trinity contends that the testimony of Keith Arthur was not properly considered by the trial court. They argue if it had been properly considered, the trial court would have to find that Trinity should not be held liable, or at least that the Daigles negligence contributed to their damages.

Keith Arthur was a loan processor employed not by Trinity, but by First United Mortgage Investments in December 2001. He processed the loan application Diez had the Daigles sign at the November meeting and attempted to secure permanent financing for the Daigles. Arthur testified that the Daigles inability to get permanent financing was caused by (1) not making payments on the construction loan to Union Planters, (2) the outstanding Stine Lumber bill, and (3) the inability to verify Mrs. Daigle's income.

The trial court's written reasons for judgment in this matter are very thorough and well-reasoned. In its written reasons, it is clear that the trial court focused not on what problems existed with the Daigle's credit in late 2001 and early 2002, but how

4

their credit problems were created in the first place. The trial court recognized that the uncontradicted testimony established that the Daigles ceased interest payments on the Union Planters loan based on representations made by Diez that it was not necessary to make those payments. Further, Diez assured the Daigles that the Stine bill should be covered by the permanent financing. The record reflects extensive questioning of Mrs. Daigle by the appellant regarding her employment status in an attempt to show she had become unemployed during the construction of the house. In fact, we find no evidence in the record that her employment status was any different in late 2001 and early 2002 than it had been for the two years preceding her initial loan application with Trinity. In July, at the closing of the construction loan, they had been assured by Diez that he had secured permanent financing for that loan.

The trial court did not fail to give Arthur's testimony proper consideration. It is clear the trial court rejected this argument as a reason for the Daigles' financial woes in the face of the uncontradicted testimony given by the Daigles. In his written reasons the trial court stated:

> In this case, Diez had the obligations to act as a reasonable and prudent loan originator, and in doing so, to handle the Daigle file according to the standards in the industry. One of his obligations was to keep the loan applicants, the Daigles appraised of the status of their loan. He failed to tell them that as of July 23, 2003, he no longer possessed a license. He also failed to tell the Daigles that he was no longer associated with Trinity nor that Trinity had declined to make the loan. He gave the Daigles a false sense of security by keeping them ignorant of the difficulties with their credit and with their earnings records. The court finds that in the circumstances of this case, Diez had a duty toward the defendants which he breached.

The record supports the trial court's findings and indicates the Daigle's credit problems were actually caused by their reliance on representations made to them by Diez. The trial court found Diez liable under the provisions of La.Civ.Code art. 2316

5

which provides, "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." We find no manifest error in the trial court's finding of facts, as they are supported by the record. Further, we find no error in the trial court's application of the law. This assignment of error is without merit.

In its second assignment of error, the appellants argue the trial court should have found contributory negligence on the part of the Daigles, specifically arguing that the Daigles failed to mitigate their damages as required by La.Civ.Code art. 2002, which provides:

> An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced.

Alternatively, the appellant argues the damages awarded by the trial court are excessive.

The appellant fails to point to any evidence to support their argument that the appellees could have mitigated their damages in this matter. The appellant argues the appellees failed to maintain the required qualifications needed to secure permanent financing.

The uncontradicted, unrequited evidence established that the failure to maintain the required qualifications to secure permanent financing resulted from the Daigles' reliance on the representations and assurances made by Diez. By the time the Daigles became aware there was a problem, the damage was done. There is no evidence of record that would support the argument that the Daigles had the opportunity to mitigate their damages and failed to do so. We find no merit in this argument.

6

The appellants have alternatively argued that the award by the trial court is excessive. Our supreme court discussed the standard of appellate review applicable to an award of general damages in *Wainwright v. Fontenot,* 00-492, p. 6 (La. 10/17/00), 774 So.2d 70, 74:

> The assessment of "quantum," or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. As such, "the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993). Moreover,
>
> > before a Court of Appeal can disturb an award made by a [factfinder,] the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.
>
> *Coco v. Winston Indus., Inc.*, 341 So.2d 332, 334 (La.1977) (internal citations omitted).

The Daigles both testified regarding the embarrassment and humiliation they suffered as a result of being sued by Union Planters. The papers were served on them by a deputy who was a friend. They were embarrassed to deal with people who were aware of the suit. Their credit was damaged, which made finding permanent financing on their own difficult. They lived with the fear for some time that they would lose their home. The tension in the household caused by these events disrupted their home life. They were forced to borrow money from friends to settle with Union Planters, which was embarrassing to them. They felt their reputations were damaged and people would believe they were simply trying to avoid their financial obligations.

7

Considering the evidence as a whole, we find no abuse of discretion by the trial court in its award of general damages. This assignment of error is without merit.

In its third and final assignment of error, the appellant argues the trial court erred in denying the appellant's Exception of No Cause of Action. The appellant argues that there is no valid cause of action against Trinity because any injury to the Daigles arose from Diez's failure to secure permanent financing and this occurred after his association with Trinity was terminated. The appellant further argues that Diez was an independent contractor and the appellee failed to establish an employment relationship between Diez and Trinity.

We find no error in the trial court's denial of the Exception of No Cause of Action. The Exception of No Cause of Action is a peremptory exception as provided for in La.Code Civ.P. art. 927. As such, it may be pled at any stage of the proceeding in the trial court prior to submission of the case for a decision. La.Code Civ.P. art. 928. No evidence is taken regarding an exception of no cause of action. La.Code Civ.P. art. 931. Instead, this exception "test[s] the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the pleading." *Indus. Co., Inc. v. Durbin*, 02-665, p.6 (La. 1/28/03), 837 So.2d 1207, 1213; La.Code Civ.P. art. 931. We have reviewed the petition and find the appellees did in fact state forth facts in the petition that afford the appellees a remedy in law. We find no error in the trial court's denial of the exception.

Although the argument goes beyond the stated assignment of error regarding the exception of no cause of action, the appellant argues that Diez was an

independent contractor and there was no employer-employee relationship between Diez and Trinity. The appellant argues in the absence of an employer-employee relationship there can be no liability on Trinity's part under the theory of *respondeat superior*. Although we believe this argument goes beyond the assignment of error, we will address it.

First, the record is void of any evidence whatsoever that Joe Diez was an independent contractor, as argued by Trinity. Second, the uncontradicted testimony at trial established that many of the representations made by Diez and relied upon by the Daigles, including the representations that he had secured permanent financing for them upon completion of the home and that it was recommended but not required that interest payments be made on the construction loan, were made by him prior to the termination of his relationship with Trinity on July 23, 2001. Finally, as properly cited and applied by the trial court, La.Civ.Code art. 3028 provides:

> The principal must notify third persons with whom the mandatory was authorized to contract on the revocation of the mandate or of the mandatory's authority. If the principal fails to do so, he is bound to perform the obligations that the mandatary has undertaken.

Trinity never notified the Daigles that Diez was no longer associated with their office in spite of the fact the Daigles made numerous calls to Trinity attempting to contact Diez. Trinity is, therefore, responsible for Diez's actions under the facts of this case.

In their answer to the appeal, the Daigles seek attorney fees pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401, *et seq*. The trial court rejected their request finding this single offense by Trinity could not be classified as a violation of the act and finding the statute to be inapplicable. In their answer to the appeal, the Daigles seek attorney fees pursuant

9

to the Louisiana Unfair Trade Practices Act, La.R.S. 51:1401 *et seq.* (LUTPA). The trial court found that attorney fees were not recoverable because this case involved only a single offense by Trinity.

Section 1406 provides for certain exemptions from LUTPA. It provides, in pertinent part:

> The provisions of this Chapter shall not apply to:
>
> (1) Actions or transactions subject to the jurisdiction of the Louisiana Public Service Commission or other public utility regulatory body, the commissioner of financial institutions, the insurance commissioner, the financial institutions and insurance regulators of other states, or federal banking regulators who possess authority to regulate unfair or deceptive trade practices.

We find that as Trinity is subject to the jurisdiction of the commissioner of financial institutions, it is exempt from the provisions of the LUTPA. La.R.S. 6:1093(A)(1). Therefore we find no error in the ruling of the trial court.

## CONCLUSION

The judgment of the trial court is affirmed in all respects. Costs of this appeal are assessed to Trinity United Mortgage.

**AFFIRMED.**

10