930 So.2d 1222 (2006)
INTERDICTION OF James Allen STEPHENS.
No. 40,965-CA.
Court of Appeal of Louisiana, Second Circuit.
June 2, 2006.
*1223 Lloyd Theland Stephens, In Proper Person.
Daniel Joseph Ellender, Monroe, for Appellees, Linda Norris, Susan McNair, and Violet Flanagan.
Before STEWART, CARAWAY and DREW, JJ.
DREW, J.
At issue between his parents is the curatorship of James Allen Stephens, a disabled adult who was interdicted as a result of catastrophic injuries received in a July 3, 1988, traffic accident. Lloyd Stephens appealed the August 31, 2005, judgment which rejected his petition to remove his son's curatrixes. Allen's mother, Linda Norris, serves as curatrix of his person while Allen's sisters, Susan McNair and Violet Flanagan, are curatrixes of his finances.
On appeal the father complained, inter alia, that the trial court erred in:
 failing to grant the parents joint curatorship which would be in Allen's best interests;
 failing to recognize an agreement between the parents to facilitate meaningful contact with both parents;
 disregarding evidence of financial misconduct and physical neglect;
 refusing to permit a physical therapist to testify as an expert; and
 awarding fees for the curatrix's attorney from the interdict's funds.
For the following reasons, the judgment is affirmed at Lloyd Stephens' costs.

FACTUAL AND PROCEDURAL BACKGROUND
The parties' son was severely injured in the auto crash which rendered him essentially helpless, bedridden, and totally dependent on others for care. Medical records stated that Allen sustained a closed head injury with brain stem damage which left him severely debilitated. Unable to swallow, Allen is fed through a tube in his abdomen and requires periodic hospitalization for tube changing and care. Due to severe contractions, he had surgery in 2003 to release his wrists and elbows. Allen retains movement in his legs, but he is unable to walk. He cannot stand without total support and has little or no control over his body. Unable to speak, his ability to communicate is severely impaired with the family reporting he can blink to indicate yes and no and can indicate whether or not he is pleased or unhappy by facial expressions.
This interdiction dispute has continued intermittently since 1988. Via a consent judgment, the parents initially were appointed provisional joint curators. Following a 1990 trial, Allen was interdicted and his mother and father were appointed joint curators. At the same time, the parties settled a damage claim for the auto accident that resulted in the interdict's injuries. In addition to a lump sum payment, an annuity was purchased to provide monthly income.
Shortly after the interdiction, the parents began disagreeing on where Allen should live and Allen's care. Arrangements varied from Allen being in a nursing home to the parents alternating physical custody every four months. The father also sought to litigate the matter in federal court in Texas while he resided there. *1224 The father then moved to the state of Louisiana and testified he intended to reside permanently in Louisiana. The mother and father had a contentious relationship and were consistently unable to get along, having married and divorced each other twice in the past. Both remarried other spouses.
In the March 19, 1999, judgment, the court terminated the joint curatorship and named the mother sole curatrix. Rotating physical custody every four months continued. The annuity was apportioned 54% to the party with physical custody, 21% for Allen's daily expenses and 25% in an interest bearing account for Allen's benefit. Allen's sisters were named joint custodians of Allen's funds. The father was held in contempt of court for litigating the interdiction in Texas contrary to previous court orders giving Louisiana exclusive jurisdiction over Allen's interdiction. In addition, the father refused to return Allen when the mother's physical custody commenced. The father also was ordered to pay the mother's Texas legal expenses. In addition to a number of other orders, the judgment again provided Louisiana's exclusive jurisdiction in this interdiction.
In the mother's contempt proceedings filed against the father for violation of the March 1999 judgment, the court awarded sole custody to the mother and granted the father supervised visitation one weekend a month at the mother's home.
This stage of the litigation began in 2002 when the father sought to remove the mother as curatrix along with his daughters, who had the financial responsibilities for Allen. The mother sought payment of past due fees. Trial was held in 2005 and the trial court denied the father's demands. The father appealed.

REASONS FOR JUDGMENT
The father made a laundry list of complaints about the mother's care of Allen and objected to interference by Allen's sisters concerning his care and the management of his money. Specifically, the father asserted that the mother failed to engage a primary care physician for Allen and failed to secure and maintain Allen in physical, speech and occupational therapy. According to the father, the mother failed to make annual reports, and abused Allen by denying him a relationship with his father. As to his daughters who managed Allen's money, the father contended that they misapplied funds which they failed to spend for Allen's benefit and did not reimburse his expenses for building a shower for Allen. The father also sought a court-ordered medical evaluation of Allen. He wanted the under-curator, Richard Thompson, replaced for failure to complain about any of the foregoing.
Adult Protection workers made unannounced visits to the mother's home and found no problems, no abuse, and an adequate home. One worker testified she saw a bruise on the son's leg in May 2005 and at an unannounced visit in June 2005, she saw the interdict and did not believe abuse existed.
The trial court noted that the doctor who had ordered physical therapy decided the interdict need not subject himself to the therapy and its expense, since there was no improvement after two and one half years. Another doctor installed a feeding tube which was changed every two years. Further, a nurse practitioner saw the interdict on a regular basis.
Observing that many of the father's pleadings were frivolous, the trial court rejected the father's demands, concluding it was in the interdict's best interest to remain with his mother who took care of his personal needs and his two sisters who took care of his financial needs. The trial court ordered a $7,245.00 bill from the attorney for the curatrix be paid by the *1225 interdict through the curatrix either by monthly payments or in a lump sum.

DISCUSSION
In his pleadings, the father sought to have the mother and sisters removed as curatrixes of Allen's person and finances. However, the father urged in appellate briefs that he be appointed co-curator with the mother. Without citing any authority, the father urged that the child custody laws favoring joint custody be applied in this dispute. La. C.C. art. 132. We reject the father's argument that the difference between child custody and interdiction of an adult are a distinction without a difference.
The laws governing interdiction regulate appointment and removal of the curator for the interdict. La. C.C.P. art 4561 mandates that the court appoint as curator the qualified person who is best able to fulfill the responsibility of his office. The curator's duty is to represent the interdict in juridical acts and to care for the person and affairs of the interdict. The curator must exercise reasonable care, diligence and prudence while acting in the interdict's best interests. La. C.C. art. 392. La. C.C.P. art. 4561(C)(1) gives the order of preference to be used by the court in selecting a curator. The only provisions of art. 4561(C)(1) applicable to Allen's interdiction are sections (d) a parent of the interdict and (f) any other person.
La. R.S. 9:1025 governs removal of a curator:
A. Any spouse or relative of an interdict, interested party, or nonprofit organization whose main function it is to serve as an advocate for persons with disabilities, the elderly, or both, may petition a court of competent jurisdiction for the removal of a curator upon a clear showing that neither the curator nor the undercurator are adequately performing their court-appointed duties.
B. A court of competent jurisdiction may remove a curator and appoint a successor, if such removal is deemed to be in the best interest of the interdict, either on its own motion or upon request by any spouse or relative of the interdict, or on the motion of any interested party or nonprofit organization whose main function it is to serve as advocate for persons with disabilities, the elderly, or both, upon contradictory hearing. The court shall consider the following factors in making its ruling:
(1) Whether the curator has, with gross negligence, misapplied, embezzled, or removed from the state, or is about to misapply, embezzle, or remove from the state all or any part of the interdict's property committed to the curator's care.
(2) The curator's failure to render any account required by law.
(3) The curator's failure to obey any proper order of the court having jurisdiction with respect to performance of the curator's duties.
(4) Proof of gross misconduct, or mismanagement in the performance of duties.
(5) Incompetence, incarceration, or any other cause rendering the curator incapable of performing court-appointed duties.
(6) Abuse of the interdict, or failure to educate the interdict or provide the interdict with as much independence as the means of the interdict and the conditions of his estate permit.
C. When the court removes a curator, it may appoint any spouse or relative of the interdict, any interested party, or any nonprofit organization whose main function it is to serve as curator for persons with disabilities, the elderly, or both.
*1226 La. C.C.P. art. 4568 directs that, upon the motion of any interested person or on the court's own motion, a court may remove a curator for good cause. The trial court has broad discretion in determining whether or not removal of a curator is in the interdict's best interests. That discretion should not be disturbed absent manifest error or clear wrong. In re Interdiction of Cade, 04-1619 (La.App. 3d Cir.4/6/05), 899 So.2d 844, writ denied, 05-1104 (La.6/17/05), 904 So.2d 697.
The father sought to rely upon a document dated October 5, 2003, in which he and Allen's mother agreed to exchange Allen every two months and to permit the father to become co-curator beginning in January 2004. The mother testified she did not recall making that agreement or signing the document, although she did acknowledge her signature. The mother also stated that at times in the past she and the father had been able to work together better but were not doing so at the time of trial. The document illustrated the fractious relationship between the mother and father who could concur periodically but frequently disagreed over Allen.
The father's assertion that he was denied the opportunity for a meaningful relationship with Allen is belied by the record. From the 1999 imposition of limited supervised visitation until 2002, the father testified he traveled from Texas to visit Allen three or four times. At an earlier deposition he answered "none" to the number of times he saw Allen from the summer of 1999 until October of 2002. At this trial, the father stated "none" was not correct. The mother testified that she had never denied the father access to and visitation with Allen, even permitting Allen overnight visits at his father's home. The father acknowledged that he had been able to take Allen to his home for visits, since he moved back to Louisiana from Texas. He also admitted in testimony that "[s]he ain't never really said I couldn't see my son."
The trial court repeatedly and consistently refused to permit introduction of any matters occurring prior to the judgment rendered in September 1999 when the father was held in contempt and was limited to supervised visitation. On appeal, Stephens urged that evidence related to pre-1999 events should have been admitted and considered by the trial court.
In Hudson v. City of Bossier, 33,620 (La.App.2d Cir.8/25/00), 766 So.2d 738, 743, writ denied, 2000-2687 (La.11/27/00), 775 So.2d 450, this court explained:
La. R.S. 13:4231 embraces the broad usage of the phrase "res judicata" to include both claim preclusion (res judicata) and issue preclusion (collateral estoppel). Under claim preclusion, a final judgment on the merits precludes the parties from relitigating matters that were or could have been raised in that action. Under issue preclusion or collateral estoppel, however, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties. Thus, res judicata used in the broad sense has two different aspects: 1) foreclosure of relitigating matters that have never been litigated but should have been advanced in the earlier suit; and 2) foreclosure of relitigating matters that have been previously litigated and decided.
The father's allegations of the curatrixes' pre-1999 misconduct either were considered by the court or should have been raised by the father in previous hearings concerning this interdiction. The trial court did not err in refusing to consider matters that predated the 1999 judgment in this endless litigation.
*1227 The father's allegations of financial mismanagement by Allen's sisters were unsupported. All payments from Allen's account from September 1999 up to the date of trial were placed into evidence as a joint exhibit. Violet Flanagan Naron, Allen's sister, testified that she was co-curatrix of Allen's finances with her sister, Susan McNair, who had primary responsibility for paying bills and keeping the books. Violet testified they consulted and agreed on all payments and that she co-signed the checks. According to Violet, neither she, her sister or her mother had taken any unauthorized funds from Allen.
Susan McNair testified that the annuity payment of $3,364.65 at the time of trial was deposited directly into Allen's account. As ordered by the court, she distributed 54% to Allen's mother for his care, 21% for his expenses and 25% to a discretionary fund for Allen. McNair explained that check stubs marked "for gifts" were presents from Allen to other family members at Christmas and birthdays. Other checks were for Christmas gifts for Allen while $360.28 was for a DVD player for Allen. Checks to the curatrix on four or five occasions were to repay Allen's mother for items purchased for Allen after his money had run out for a month while an $80 check to Violet reimbursed her for picking up Allen's prescription. Some checks to Allen's mother were for building supplies used to remodel Allen's room. McNair reported Allen could not afford the $17,000 wheelchair recommended by the physical therapist but that she paid $2,339.00 for improvements recommended for Allen's existing wheelchair, which cost $8,000.
Following detailed testimony about assorted expenditures, McNair acknowledged they probably did not make the best decisions that could be made in every instance but stated they did the very best they could for Allen with what they had. Concerning reimbursement to the father for a shower constructed for Allen in his home, McNair stated she was ready to pay him when he presented receipts for his expenses. The trial court did not err in finding there had been no financial misconduct.
The father's assertions that Allen was abused and denied proper medical care and therapy were not proven. As noted previously, Adult Protection Workers made unannounced visits to check on reports of mistreatment of Allen in his mother's home. The first report was of financial misconduct by the curatrix buying things for herself instead of Allen whose wheelchair needed repairs. The worker examined Allen's financial records and found no evidence of impropriety. She also determined that improvements had been made to the wheelchair. She found the home to be very clean. Allen had his own room with all his medical supplies there. His body was observed to be in good condition. The report of mistreatment was unsubstantiated.
Another Adult Protection Worker investigated a report of possible physical abuse and neglect. She saw Allen three times. She observed bruises on his legs which she stated did not appear to be caused by hitting, since there were no scratches or welts. The bruises were located at the bottom of his legs. His caretakers explained to her that he had no control of his legs, which sometimes hit the chair. She also observed a rash for which he was taken to the doctor and given a prescription. She instructed the curatrix to fill the prescription. Based upon her observations, the department was closing its case.
After hearing all the testimony and reviewing all the evidence, the trial court concluded that the father's allegations of inadequate medical treatment and therapy were unsupported. Dr. Douglas C. Brown, Orthopaedic Center of Monroe, described *1228 Allen as persistently completely and totally dependent upon others. Dr. Brown reported that during the three years of his treating Allen, there was no significant change resulting from physical therapy with his only improvement resulting from surgery. The doctor opined that therapy should be stopped and carried on by the family, which was doing an excellent job with general care. Allen's mother testified they took Allen for medical care every two to three weeks and that, to the best of her ability, did everything the doctors recommended. Allen's sister, Susan McNair, stated that no doctor had ever suggested they should be removed as Allen's caregivers and that they had done all they were medically advised to do given their financial constraints.
Melanie Massey, a physical therapist, testified she treated Allen on referral from Dr. Brown from January 2003 until August 2004 when Dr. Brown stopped the therapy. Massey assisted the family in getting braces for Allen's feet and neck. Massey advised both the father and the mother about exercises to be done with Allen at home. Both parents actively participated in the therapy and consulted with Massey.
The trial court did not permit Massey to give her opinion as to consequences of discontinuing Allen's physical therapy. On appeal, the father contended that the trial court erred in refusing to permit this testimony. Massey stated she had a degree in physical therapy and had worked twelve years as a physical therapist, ten years on her own. She acknowledged that she performed therapy under a prescription from a doctor and stopped therapy when the doctor directed the therapy be stopped.
A district court has broad discretion in determining whether expert testimony is admissible and who should be permitted to testify as an expert. This court will not disturb a district court's refusal to qualify a witness as an expert absent an abuse of discretion. In re Succession of Pardue, 40,177 (La.App.2d Cir., 11/8/05), 915 So.2d 415, writ denied, XXXX-XXXX (La.4/28/06), 927 So.2d 284. We find no abuse of the trial court's great discretion in refusing to permit Massey to give an expert opinion on the effect of discontinuing Allen's therapy.
Finally, the father vigorously objected to the trial court directing that the attorney for the curatrix be paid out of the interdict's funds for his services in defending the curatrixes in this litigation. La. C.C.P. art. 4550 provides that the trial court may render judgment for costs and attorney's fees against any party as the court may consider fair. This court in Matter of Heard, 588 So.2d 799 (La.App. 2d Cir.1991), stated that a curator acting in good faith is not personally liable for the expenses of litigating matters of the curatorship, including attorney fees. Under the facts of this case, the trial court correctly assessed the costs of defending this litigation against the funds of the interdict.
While Allen's mother and curatrix is essentially paid a salary out of his monthly annuity for his care, the amount is modest in light of Allen's total dependence and the time and labor expended by his mother and sisters (who are not compensated) to care for his person and finances. We agree with the trial court's finding that the father's allegations of wrongdoing and mistreatment were unfounded and that many of his pleadings were frivolous. To have required Allen's mother and sisters to personally bear the costs of defending themselves would have been unjust.

DECREE
The trial court has broad discretion in determining whether or not removal of a curator is in the interdict's best interests. The trial court did not abuse that discretion in rejecting the father's requests that *1229 Allen's curatrixes be removed. The judgment of the trial court is affirmed with costs of the appeal assessed against Lloyd Stephens.
AFFIRMED.