PEETS *et al.* v. MARTIN, SUPERINTENDENT OF EDUCATION.[*]

(En Banc. May 26, 1924. Suggestion of error overruled Aug. 5, 1924.)

[101 So. 78. No. 23887.]

1. INJUNCTION. *Schools and school districts. Acts of de facto school trustees valid and cannot be restrained if they could be done by legal trustees.*

The acts of school trustees in office, and recognized by authority as such, are valid whether they were regularly or rightfully

elected or not, and their acts cannot be restrained by injunction if they are such as may be done by legal trustees.

2. SCHOOLS AND SCHOOL DISTRICTS. *County school board may create county school district, independent of petition, and locate site of building.*
   The county school board has power to create consolidated school districts independent of any petition, and may locate the site for the erection of a school building therein, and the court will not control their discretion in reference thereto.

3. SCHOOLS AND SCHOOL DISTRICTS. *Statutes. All statutes on subject will be considered in ascertaining power not specifically conferred; power may be conferred by implication; trustees of consolidated school districts empowered to contract for erection of school building.*
   Where the power to erect school buildings for the consolidated and common schools are not specifically conferred on any board, but public funds are authorized to be raised and used for that purpose, the court will look to all statutes in reference thereto, and will deduce from these statutes, taken as a whole, the legislative intent. A power may be conferred by implication as well as by express language, and considering sections 3734, 3742, 7344, Hemingway's Code (Code of 1906, sections 361, 369, 4524), section 6660, Hemingway's Code (chapter 206, Laws of 1914), section 4, chapter 54, Laws of 1920, and section 4002, Hemingway's Supplement (Laws of 1920, chapter 170), together, it is reasonably certain that the legislature intended to vest the power to erect such consolidated and common school buildings in the school trustees of the district.

ANDERSON and SYKES, JJ., dissenting.

---

*Headnote 1. Injunctions, 32 C. J., section 395; Schools and School Districts, 35 Cyc, p. 886; 2. Schools and School Districts, 35 Cyc, p. 850; 3. Schools and School Districts, 35 Cyc, p. 925; Statutes, 36 Cyc, pp. 1113, 1147.

APPEAL from chancery court of Copiah county.

HON. V. J. STRICKER, Chancellor.

Suit by G. W. Peets and others against J. Q. Martin, superintendent of education. From judgment dissolving injunction, complainants appeal. Affirmed.

135 Miss.—46.

*Wilson, Henley & Hendrick* and *M. S. McNeil,* for appellants.

I.   The election of trustees was absolutely void. *Hurdle* v. *State,* 131 Miss. 517.   In this case Chief Justice SMITH said: ''In order for a public election to be of any legal efficacy it must be held at the time and place designated by law or by the authority to which the right to designate the time and place is delegated by law.''

Section 4004 of Hemingway's Code, provides that all elections affecting consolidated school districts must be held at the school house unless some other place is designated by the trustees of the school.   There were no trustees of the school prior to the time of this and therefore there could be no place designated other than the school house.

The testimony in this case shows without conflict or question that the election was not held at the school house but at a private home.   This renders the election void. *Barrett* v. *Cedar Hill Consolidated School District,* 123 Miss. 370; *Boutwell* v. *Board of Supervisors,* 128 Miss. 337.

II.   The law vests the right to let all public contracts in the board of supervisors and nowhere provides that the trustees of a consolidated school district may let the contract for the erection of a public school building.

The law specifically provides that the trustees of the school of a separate district have this authority, but there is not a syllable or even an iota of law that even pretends to give such authority to the trustees of a consolidated school district.

A careful reading of the various statutes enacted by the legislature with reference to the creation and maintenance of consolidated school districts will reveal the fact that the legislature failed to authorize or invest the trustees of a consolidated school district with this power. The legislature having failed to act upon the subject,

then the question remains, where does the authority rest? See sections 3734 and 3742, Hemingway's Code. *Thompson* v. *Agricultural High School,* 117 Miss. 624.

We notice by the reading of chapter 196 the limitations thrown around the letting of contracts for the transportation of pupils. It is unreasonable to insist that the legislature intended that the property of a consolidated school district should be placed under a heavy tax for the erection of a school building and leave it to the discretion of perhaps insolvent trustees to let the contract, just as they might see fit. This is exactly the result of the contention of counsel for appellee.

Chapter 234, Laws of 1918, will demonstrate that the legislature recognized the title to all schools outside of the separate school district to be in the county, and that the board of supervisors of the county have the sole and absolute authority of disposing of these school buildings.

Since the legislature has failed to specifically authorize the trustees of a consolidated school district to let contracts for the erection of consolidated schools and has failed to safeguard the letting of such contracts as they have done in all other cases, it was clearly their intention that these contracts should be let by the board of supervisors under sections 3734 and 3742, Hemingway's Code.

*J. F. Guynes* and *J. H. Garth, Jr.,* for appellee.

I. It is insisted defendants were not duly qualified trustees because the election was held without notice to the patrons and that the election was held at a place not designated by law. Even though the election of trustees was not held at the school house, this was a mere irregularity and not fatal in this case.

Appellee trustees, since their selection, have been the sole and only persons claiming right to the office, have been recognized by the people of the district and by the superintendent of education and by the public generally as trustees. They are, therefore, *de facto* trustees.

Their right to the office cannot be questioned in a collateral proceeding. Their right to the office could be questioned only by a *quo warranto* proceeding. *Hurdle* v. *State,* 131 Miss. 517.

II.   It is insisted the trustees and superintendent have no right to let the contract for erection of school building but the board of supervisors must let such contract. No provision in law can be found authorizing the board of supervisors to let such contract. We admit the statute does not expressly place said duty upon the trustees but does so by implication. In separate school districts trustees are expressly charged with the duty of erecting school buildings. Hemingway's Code, sec. 7348.

The sole province of the board of supervisors is to create funds for erection of building in consolidated school districts, which they may do by taxation or issuance of bonds. See chapter 170, Mississippi Laws 1920.

Said law further provides as follows: "Such funds shall be disbursed on pay certificates issued by the county superintendent, on the order of the trustees of the district." Certainly it was the legislative intent, when charging them with the responsibility of disbursing the funds to clothe them also with power to contract for work for which the funds were to be expended. See, also, section 7344, Hemingway's Code.

This county school board is charged by law with the duty and responsibility of locating site for school building and need not consult the patrons of a school district. Hemingway's Code, sec. 7332; *Dye* v. *Mayor, et al.,* 119 Miss. 393; *Cross* v. *Fisher,* 132 Tenn. 31, 117 S. W. 43; *Collins* v. *Watts,* 117 Miss. 524.

*Wilson, Henley & Hendrick* and *M. S. McNeil,* for appellants, in reply.

A consolidated school district is simply a common school district where two or more existing schools have

consolidated into one single district. *Walton School* v. *Covington County,* 115 Miss. 117. Therefore, the powers vested in the trustees of a consolidated school district are identically the same as are vested in the trustees of a common school district, except in so far as the statutory law of the state may provide otherwise, and there is no exception in this case.

The maxim *"Expressio unius est exclusio alterius"* applies in this case and the fact that the legislature has undertaken to enumerate the powers and duties of school trustees shows beyond a doubt that it did not intend for the trustees to have powers which are not enumerated. Section 7348, of Hemingway's Code, expressly vests in the trustees of separate school districts authority of erecting school buildings. But there is a vast difference in the legal *status* of a separate school district and a consolidated school district.

It is an elementary principle of law that the trustees of a consolidated school district have no powers except those vested in them by the statute. It is equally well established that it is to be construed most strongly against a like claim by it, and not clearly given by the statutes that they are not general agents of the people, but are merely officers elected to perform certain functions defined by the statute of the state. These duties cannot be extended by mere implication to grave and important acts not authorized by law. *City of Hazlehurst* v. *Mayes,* 96 Miss. 656.

Counsel insists that this authority is not vested elsewhere and that by implication it must be vested in the trustees. We are forced to disagree with this contention, as we believe that the board of supervisors have full authority over this question. Sections 3734, 3742, Hemingway's Code.

Argued orally by *W. S. Henley,* for appellant, and *J. F. Guynes,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

In March, 1923, a petition signed by thirty-five patrons of the Centennial, Oak Ridge, and Midway rural public schools of Copiah county, was presented to the county school board, requesting said county school board to consolidate the said schools, and also that territory of the Grafton Hall school which lies within Copiah county, said Grafton Hall school being composed of territory in Copiah and Lincoln counties and petitioned the board to locate the said consolidated school at or near the Ras Matthews' place in said territory.

Subsequently the county school board passed an order consolidating said schools. Thereafter, on petition, and proceedings for that purpose, the board of supervisors ordered the issuance of five thousand dollars worth of bonds for the purpose of erecting a school building. Said bonds were sold and the proceeds turned over to the proper authorities. Several meetings of the county school board were subsequently held to locate the site for the schoolhouse, the final meeting being held on August 11, 1923, at which meeting the location for the school building was finally settled. The building of the proposed schoolhouse on this site was enjoined by the suit filed in this cause.

On the first Saturday in May, 1923, the patrons of the said school undertook to elect trustees for the new consolidated school district, and a report of the said meeting and the names of the trustees was certified to the county superintendent of education. Subsequently one of the trustees so elected by the patrons was found to be ineligible, and the county superintendent appointed his successor. The said trustees undertook to qualify and elect teachers for the ensuing term, said school trustees being in possession of the offices as such, and acting therein. The said trustees were proceeding to let a contract for the construction of a consolidated schoolhouse

when the complainants filed their bill seeking to restrain them from so doing.

It was alleged in the bill that the place where the building was proposed to be erected was misrepresented by some of the signers of the petition praying for the establishment of the said school and the location of the school site, and that the county school board had failed to exercise its own judgment in selecting the school site, but that the said site had been selected by a mass meeting of patrons, and that the board surrendered its judgment to the wishes of the mass meeting; and that the attempted election of trustees was at a meeting held at the wrong place for such purpose; and that they were not duly elected trustees; and that the trustees were not the proper persons to let the contract to erect the school building; that they had let the contract and were erecting the building under the contract, and spending the funds, derived from the said sale of bonds from said district, unlawfully, that is to say, without legal authority.

The bill was demurred to; the demurrer overruled. The bill was then answered, the answer admitting the consolidation of the districts, the election of the trustees, but claiming the same are valid and held according to law, and that the election of the trustees was valid, and that they were acting as trustees, and were the only ones claiming to be trustees recognized by the county superintendent of education and the people of the district. The answer admitted that they had let the contract to erect the school building, etc., on the site designated by the county school board, but denied the allegation that the county school board failed to exercise its judgment and authority to select a site for the school building, etc. On the hearing, the injunction was dissolved, and from the judgment of the court, this appeal was prosecuted.

The trustees were *de facto* officers, and their acts as such are valid and cannot be attacked in the method here sought. The county school board has jurisdiction to con-

solidate school districts, independent of any petition, and its acts in this respect will not be interfered with by the courts. In *Sellier* v. *Dedeaux,* 99 So. 439, we decided that the county school board has jurisdiction to locate a school building site when it becomes necessary to erect a new building and that the court will not undertake to control the discretion of the county school board in such matters.

We come now to the question as to whether the school trustees of consolidated schools have the power and authority to let the contract for the erection of a school building. The appellants insist that, under sections 3734 and 3742, Hemingway's Code (sections 361 and 369, Code of 1906), boards of supervisors have the right to let contracts because the law does not specifically provide who shall let these contracts for the erection of buildings for common schools and consolidated schools.

Section 3734, Hemingway's Code, provides: ''All contracts by boards of supervisors, for any public work not otherwise specifically provided for, where the amount of the contract shall exceed fifty dollars, shall be made upon at least three weeks' public notice,'' etc.

This section does not confer authority upon the board of supervisors to erect buildings, but regulates the manner of exercising the powers given in other sections of the Code. The words, ''all contracts by boards of supervisors for any public work not otherwise specifically provided for,'' do not enlarge the powers of the board, but regulate the manner of exercising the powers when the regulations are not otherwise provided. An examination of the various sections giving boards of supervisors jurisdiction fails to disclose any specific power conferred by statute upon boards of supervisors for this purpose. Outside of roads, ferries, and bridges the powers of the boards are statutory, and must be either expressed in the statute, or must arise by necessary implication from the language of the statute. Section 3742, Heming-

way's Code (section 369, Code of 1906), is likewise a regulation of powers granted by other statutes, and does not confer any new power.

It will be necessary, then, to review the various statutes bearing upon common or consolidated schools, and to deduce from them the legislative purpose because the powers are not expressly granted either to the board of supervisors or to the school trustees. The powers, we think, arise by implication.

Section 7344, Hemingway's Code (section 4524, Code of 1906), reads as follows:

"The trustees may suspend or expel a pupil for misconduct, and shall look after the interests of their schools, visit the same at least once during each month, by one or more of their number, see that fuel is provided, protect the school property and care for the same during vacation, and arbitrate difficulties or disputes between teachers and pupils; but either party, feeling aggrieved by their decision, may appeal to the county superintend-, ent, and from him to the state board of education. And the trustees may make provisions for the comfort and welfare of the pupils; but the same shall not involve an expenditure of money not already appropriated for the purpose by the proper authorities."

By the last sentence of this section, the trustees are authorized to "make provisions for the comfort and the welfare of the pupils; but the same shall not involve an expenditure of money not already appropriated for the purpose by the proper authorities."

Section 4002, Hemingway's Supplement of 1921, provides for the issuance of bonds, among other things, for the purpose of erecting, repairing, and equipping school buildings and teachers' homes in the said district. The tax assessor is required to make a separate assessment of the property of such district, and the county tax collector to collect the taxes each year, and to deposit the same with the county treasurer, to the credit of the district for which it was levied. It then provides:

"Such funds shall be disbursed on pay certificates issued by the county superintendent, on the order of the trustees of the district."

Section 6660, Hemingway's Code (chapter 206, Laws of 1914), provides:

"That all boards of supervisors, boards of school trustees of the common schools, and all boards of mayor and aldermen, whether operating under a special charter or code chapter, shall purchase their supplies for public works, and for public buildings, and for public construction, upon competitive bids, letting contracts therefor for periods of not more than twelve months in advance," etc.

Chapter 54, Laws of 1920, provides for buying materials necessary for making blue prints, plans, and specifications for rural school buildings. Section 4 in said chapter provides:

"That said plans, when prepared, shall be printed and furnished free to trustees of public schools in need of same."

It seems that, taking all of these provisions together, the trustees are to be furnished with plans and specifications; that they are to pay out the money raised by bond issues for the purpose of erecting the buildings, together with the provision that the trustees may make provision for the comfort and welfare of the pupils, but shall not expend money not already appropriated for the purpose, and a requirement that the school trustees or other boards shall purchase their supplies for public works and for public buildings and public construction, upon competitive bids, letting contracts therefor for short periods, clearly carries the idea that the erection of the school buildings and the letting of contracts therefor are committed to the trustees of the school district. This seems to have been the construction given by the administrative departments. See Opinions Attorney General 1911-1913, p. 287. It is our information that

these consolidated schoolhouses have generally been built by the trustees of the district. Where the construction of the statute is doubtful, the construction placed thereon by the administrative departments, if reasonable, should be followed.

The judgment of the court below will be affirmed.

*Affirmed.*

ANDERSON and SYKES, JJ., dissent.