# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-01794-SCT

*PURSUE ENERGY CORPORATION*

*v.*

*NANCY CAROL GARRETT ABERNATHY, NANCY G. ABERNATHY, ANNE M. BALLANTYNE, STEPHEN P. BALLANTYNE, BLACK WARRIOR MINERALS, INC., ERMA BOYD, JOHN L. BURWELL, JR., JOHN L. BURWELL, JR. CHILDREN'S TRUST, LAURA JEAN GARRETT BUTLER, MARK C. BUTLER, RALPH C. BUTLER, BARBARA ANN WHITE O'CONNELL BYRD TRUST, DORIS F. CALLENDER, MARY MORTIMER CAMPBELL CHILDREN'S TRUST #2, CHAINCO, INC., HOMER CUMMINGS, SID DAVIS, MARIE I. FAIRCHILD LIT, MARIE I. FAIRCHILD TRUST, W.R. FAIRCHILD CONSTRUCTION, W.R. FAIRCHILD CONSTRUCTION, LLC, WILEY FAIRCHILD, HARRISON S. FORD, GARY DARWIN GARRETT, GEORGIA L. JENKINS GLISSON, BARBARA ANN COOPER HALEY, ERIN HARGRODER, CHRIS HEMETER LIFE ESTATE, W. D. HILTON, CARROLL INGRAM, MARY C. JENKINS, VELMA R. JENKINS, JANET WHITE JOHNSTON, JAMES T. KENDALL, W. BALDWIN LLOYD, A. W. MAGRUDER, A. W. MAGRUDER, JR., J.D. MASHBURN AND WIFE , JAMES D. MASHBURN, MARIE MCKAY MASHBURN, EDWIN D. MOORE, GLENN G. MORTIMER, GLENN G. MORTIMER, JR. L/E, MORTIMER GROUP, PINEY WOODS SCHOOL, ROBERT S. PIRTLE, LOTTIE DENT POTTER, MARY HELEN GARRETT SHEALY, R. H. SIMS, JR., RUDY H. SIMS, JR. AND LARRY A. SIMS, JAMES B. SYKES, JR., BARBARA WALTERS THOMPSON, MD, GRADY HAMILTON VAUGHN, MIRIAM H. WHITSETT AND WIRT A. YERGER*

DATE OF JUDGMENT:          10/01/2009
TRIAL JUDGE:                    HON. J. LARRY BUFFINGTON
COURT FROM WHICH APPEALED:   SIMPSON COUNTY CHANCERY COURT

ATTORNEYS FOR APPELLANT:       PAUL STEPHENSON
                               WILLIAM F. RAY
                               G. DAVID GARNER
ATTORNEYS FOR APPELLEES:        C. VICTOR WELSH, III
                               CRIMES G. PITTMAN
                               MARCUS M. WILSON
                               CHARLES FRANK FAIR BARBOUR
                               ERNEST G. TAYLOR, JR.
NATURE OF THE CASE:            CIVIL - OTHER
DISPOSITION:                   AFFIRMED IN PART; REVERSED AND
                               REMANDED IN PART - 10/13/2011
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLSON, P.J., PIERCE AND KING, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     This Court must determine whether an oil company can deduct reasonable processing and investment costs from the payments made to royalty owners. If so, we must determine whether Mississippi Code Section 53-3-39 is applicable in calculating the damages owed to royalty owners for unreasonable deductions. We affirm the chancellor's holding that reasonable processing and investment costs may be deducted from royalty owners' payments. However, the chancellor erred in failing to apply Section 53-3-39 to calculate damages. Thus, we affirm in part, and reverse and remand for recalculation of damages consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY**

¶2.     In the 1960s, Shell Oil Company built the Thomasville Gas Plant in Mississippi, at a cost of $41 million, to process "sour" gas and turn it into marketable "sweet" gas and its by-product, marketable sulfur. In order to recover the costs of operation and its investment,

2

Shell developed and implemented an equation that contained two primary components. The first component consisted of the actual capital investment combined with a return on that investment, and the second component represented the cost per day of operating the plant.

¶3.    Using this formula, Shell charged all royalty owners with a proportionate share of processing and investment costs by deducting a fee from the royalty owners' checks. In 1974, royalty owners challenged the use of the formula in *Piney Woods Country Life School v. Shell Oil Co.*, 539 F. Supp. 957 (S.D. Miss. 1982). The district court found for Shell, and the plaintiffs appealed. On appeal, the Fifth Circuit determined that the royalty owners could be taxed with costs of processing their gas as long as the fees were reasonable. *Piney Woods Country Life School v. Shell Oil Co.*, 726 F. 2d 225, 241 (5th Cir. 1984). The Fifth Circuit remanded the case to the district court to address the reasonableness of Shell's costs. *Id*. The district court found the costs to be reasonable, thus approving Shell's formula. At the time of the *Piney Woods* case, Shell had not recovered the full $41 million of its investment. Shell completed recovery of the $41 million capital investment in 1990.

¶4.    In 1978, Pursue commenced sour gas development activities in Thomasville. In 1979, Pursue built its own gas processing plant. The Pursue plant was built at a cost of $53 million, which was recovered from its royalty owners. By December 1995, Pursue had recovered the full amount of investment for its Thomasville plant. In early 1996, Pursue purchased Shell's plant, the associated wells, reserves and related facilities for $28,130,000. As a result of the purchase, Pursue decided to use the Shell plant for all production and dismantled its own plant.

3

¶5. In 1996, Pursue moved into the Shell plant and began using the Shell gas processing formula to deduct costs from the royalty owners. Although Pursue had paid only $28,130,000 for Shell's processing plant, associated wells, reserves, and related facilities, Pursue continued to use the Shell $41 million capital investment as part of the formula for recovery of the cost of production.

¶6. In December 2000, James B. Sykes and thirty-six other plaintiffs ("the Sykes plaintiffs") filed this action in the Chancery Court of Simpson County, requesting that the court order an accounting of capital-investment charges withheld since Pursue had assumed ownership and determine whether the amount of capital investment was assessed correctly. On December 13, 2001, an amended complaint was filed, increasing the number of plaintiffs to forty-nine.

¶7. In February 2002, the case proceeded to trial. On September 20, 2002, while the parties were awaiting the chancellor's decision, Pursue filed a voluntary petition for relief under Title 11 of the United States Bankruptcy Code in the Southern District of Mississippi. The filing of the bankruptcy petition automatically stayed the chancery-court case and prevented the chancellor from entering a final judgment. On June 16, 2003, the bankruptcy court lifted the stay and allowed the chancery court to rule on the case, providing any judgment would not be final and the appeal time would be tolled pending further order of the bankruptcy court.

¶8. On October 7, 2003, the chancellor found that the capital investment costs of the Shell plant had been previously recovered. The chancellor held that Pursue was unreasonable in requiring the Sykes plaintiffs to pay for their share repetitively. Therefore, the Sykes

4

plaintiffs were entitled to damages equal to their pro rata share of the capital-investment charges deducted by Pursue that duplicated the capital investment previously recovered by Shell. The chancellor relied on Pursue's records, which valued the reserves purchased from Shell at $58,901,000, to determine that the Shell plant was a non-cost item and should have been valued at zero instead of $41 million. Thus, the chancellor, in reliance on *Piney Woods*, held that Pursue could continue to deduct daily plant-operating expenses, but that the Sykes plaintiffs were entitled to relief for any amount charged above and beyond operating expenses, or their pro rata share of $42,482,919.47.[1]

¶9. On May 26, 2004, the bankruptcy court lifted the stay a second time for the chancery court to rule on the issue of punitive damages. After a hearing on January 22, 2008, the chancellor found that a fiduciary relationship existed between Pursue and the Sykes plaintiffs, and that Pursue's conduct in using Shell's investment number to deduct unreasonable capital-investment charges could warrant punitive damages. On January 30, 2008, the chancellor entered his ruling denying punitive damages but granting attorneys' fees and costs. The chancellor awarded the Sykes plaintiffs attorneys' fees at forty percent of actual damages, together with expenses.

---

[1] Stephanie Smith, a certified public accountant for Grantham, Poole, Randall, Reitano, Arrington & Cunningham, PLLC, testified that her assignment as an expert witness was to review accounting information furnished by Pursue and to compute damages owed to the royalty owners. Smith prepared and entered a schedule into evidence that portrayed the total amount of processing costs recovered from royalty owners for the period of February 1996 through December 2001, including the operating costs and investment charges by well, by month. For that time frame, Smith found that the total amount of investment charges recovered was $42,482,919.57.

¶10. On June 10, 2009, the bankruptcy court lifted the stay a third time, allowing the chancery court to enter a final judgment on all issues without further order of the bankruptcy court. On October 2, 2009, the chancellor entered a final judgment awarding the Sykes plaintiffs actual damages of $684,717.13, their pro rata share of $42,482,919.47, prejudgment interest on actual damages at six percent simple interest, attorneys' fees based on forty percent of actual damages, litigation expenses and interest on all amounts from the date of judgment at six percent per annum.

**DISCUSSION**

¶11. Pursue raises the following issues on appeal: (1) Whether the chancery court erred in finding that Pursue was liable to the Sykes plaintiffs for unreasonable processing fees deducted from royalty payments on poisonous sour gas produced from wells operated by Pursue, (2) whether the chancery court erred in failing to apply *res judicata* to bar the claims of the Sykes plaintiffs, (3) whether the chancery court erred in finding the relationship between Pursue and the lessors to be fiduciary, (4) whether the chancery court erred in finding that punitive damages could have been awarded and awarding attorneys' fees in lieu of punitive damages, (5) whether the chancery court erred in its award of prejudgment interest, (6) whether the chancery court erred in failing to apply the statute of limitations to bar some of the claims of the plaintiffs.

**I. Reasonableness**

¶12. Pursue argues that the chancellor erred in finding the processing fees charged to royalty owners to be unreasonable. Pursue claims that the fees are one-third to one-half less

6

than the processing fees charged by other sour-gas processors. Pursue argues that, because its processing fees are less than the market rate, the processing fees are reasonable.

¶13. This Court has held that an oil and gas lease is to be construed most strictly against the oil-company lessee. *Frost v. Gulf Oil Corp.*, 119 So. 2d 759, 761 (Miss. 1960). In the instant case, the oil and gas leases do not expressly provide that the oil company may deduct any processing charges. In *Piney Woods*, the court ruled that an oil company could deduct reasonable costs of processing its royalty owners' gas, plus recoup its investment, from the payments made to royalty owners. Specifically, the court held:

> [T]he lessors may be charged with processing costs, by which we mean all expenses, subsequent to production, relating to the processing, transportation, and marketing of gas and sulfur. . . . Processing costs may be deducted only from valuations or proceeds that reflect the value added by processing. Thus, processing costs may not be deducted from royalties for gas "sold at the well", because the price of such gas is based on its value before processing. . . .The function of processing costs in determining royalties based on "market value at the well" is to adjust for imperfect comparisons.

*Piney Woods*, 762 F. 2d at 240.

¶14. This Court must determine whether an oil company can deduct reasonable processing and investment costs from the payments made to royalty owners. If so, then we must determine whether the chancellor erred in determining that Pursue had recovered unreasonable processing fees from the Sykes plaintiffs.

¶15. In the 1960s, Shell built the Thomasville gas plant for $41 million. In order to recover the costs of operation and its investment, Shell developed and implemented an equation that contained two primary components. The first component consisted of the actual capital investment combined with a return on that investment, and the second component

7

represented the cost per day of operating the plant. Using this formula, Shell deducted processing costs from its royalty owners' checks. By 1990, Shell had recovered the full amount of its investment. In early 1995, Pursue purchased Shell's plant and the associated wells, reserves, and related facilities for $28,130,000. In 1996, Pursue moved into the Shell plant and began using the Shell gas-processing formula to deduct costs from the royalty owners. Pursue began to charge each royalty owner a pro rata share of the $41 million capital investment previously recovered by Shell.

¶16.    The chancellor held that Pursue was unreasonable in requiring the Sykes plaintiffs to continue to pay the capital-investment cost after the amount had been recovered. The chancellor then relied on Pursue's records and determined that the Shell plant was a noncost item of the purchase, incurring no additional capital investment costs, and should have been assigned a value of zero. Thus, in reliance on *Piney Woods*, the chancellor held that Pursue could continue to deduct daily plant-operating expenses, but that the Sykes plaintiffs were entitled to relief for any amount charged above and beyond operating expenses.

¶17.    We agree with the Fifth Circuit's analysis in *Piney Woods* and hold that an oil company can deduct reasonable processing and investment costs from the payments made to royalty owners. Further, we hold that it is unreasonable for the Sykes plaintiffs to pay for their share of investment costs repetitively. Therefore, we affirm the determination of the chancellor.

## II. *Res Judicata*

¶18.    Pursue argues that the threshold issue on appeal is whether the processing costs shared by lessors may exceed the actual operating expenses after the processing-plant owner has

8

received revenues sufficient to pay for the plant. In *Piney Woods*, the court held that Shell could deduct reasonable costs of processing its royalty owners' gas, plus recoup capital investment costs. *Id*. Thus, Pursue argues that the threshold issue of this appeal has been conclusively resolved, and the claims of the Sykes plaintiffs are barred by *res judicata*.

¶19.    This Court has set forth the four requirements that must be present before the doctrine of *res judicata* will be applicable:

> (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made. Where these four identities are present, the parties will be prevented from re-litigating all issues tried in the prior lawsuit, as well as all matters which should have been litigated and decided in the prior suit.

*Deere & Co. v. First Nat'l Bank of Clarksdale*, 12 So. 3d 516, 522 (¶34) (Miss. 2009) (citations omitted).

¶20.    *Res judicata* requires a finding of all four identities. The identity of the subject matter of the cause of action has not been satisfied. In *Piney Woods*, the plaintiffs argued that the deduction of any processing fees was excessive and unreasonable. During the adjudication of the *Piney Woods* case, the capital-investment cost of $41 million for the construction of the Thomasville plant had not been recovered, was included within the formula, and was held to be a reasonable deduction from royalties. Shell Oil had recovered the full amount of the investment by 1990, approximately five years before Pursue acquired all of Shell's operating facilities for $28,130,000. When Pursue assumed the royalty owners' leases from Shell, it implemented the same processing formula, including the capital-investment sum of $41 million. The Sykes plaintiffs allege that Pursue deducted excessive and unreasonable sums

9

of money from their shares of sales proceeds by recovering for capital-investment expenditures that previously had been recovered.

¶21. Simply put, the issue is not the same in these two cases. In **Piney Woods**, the issue was whether an oil and gas lessee could recover capital costs from royalty owners. In the present case, the question is whether the same cost can be twice recovered. Accordingly, *res judicata* does not apply to bar the Sykes plaintiffs' claims.

### III. Fiduciary Relationship

¶22. Pursue argues that the chancellor erred in finding the relationship between the plaintiffs as mineral lessors and Pursue as mineral lessee to be fiduciary. We previously have held that the relationship that arises under an oil and gas lease between a mineral lessee and royalty owner is contractual. **Nygaard v. Getty Oil Co.**, 918 So. 2d 1297, 1241-42 (Miss. 2005). Thus, the chancellor erred in holding that a fiduciary relationship arose between the Sykes plaintiffs and Pursue.

### IV. Punitive Damages

¶23. Pursue claims that the Sykes plaintiffs failed to prove that they were entitled to punitive damages by clear and convincing evidence. Mississippi Code Section 11-1-65(1)(a) provides that punitive damages are awarded only if the Sykes plaintiffs proved by clear and convincing evidence that Pursue acted with actual malice, fraud, or gross negligence/reckless disregard for the rights of others. *See* Miss. Code Ann. § 11-1-65(1)(a) (Rev. 2002). More specifically, in a breach-of-contract case, a plaintiff must prove that the breach was the result of an intentional wrong or that a defendant acted maliciously or with reckless disregard of

10

the plaintiff's rights. *Hamilton v. Hopkins*, 834 So. 2d 695, 703 (¶26) (Miss. 2003) (citations omitted).

¶24. After reviewing the records presented at trial, the chancellor found that Pursue continued to recoup the $41 million capital-investment expenditure that previously had been recovered by Shell. The chancellor found that Pursue never informed the royalty owners that the $41 million capital investment expenditure previously had been recovered.

¶25. Further, the record indicated that royalty owners who were knowledgeable of the oil and gas industry were charged lower processing and investment fees, and the remaining royalty owners were charged a greater proportion of the costs that were recovered. Because the record indicated that Pursue negotiated with people who were in the oil and gas business for a lesser amount, the chancellor held that Pursue's conduct was willful, malicious and intentional. We find no error in the chancellor's award of punitive damages.

¶26. Although the chancellor held that punitive damages could be awarded, the chancellor awarded attorneys' fees in lieu of punitive damages. This Court previously has held that attorneys' fees may be awarded instead of punitive damages.

> A trial judge may validly find that, although the conduct of a defendant in a given case is such that the awarding of punitive damages would be appropriate, the actual awarding of additional monetary damages above the compensatory damages would serve no purpose or otherwise be inappropriate. Nevertheless, the trial judge may also validly find that the plaintiff should not have to suffer the expense of litigation forced upon it by the defendant's conduct, and therefore determine that attorney fees should be awarded.

*Aqua-Culture Technologies, Ltd. v. Holly*, 677 So. 2d 171, 184 (Miss. 1996).

¶27. Thus, it was proper for the chancellor to award attorney's fees in lieu of punitive damages.

11

## V. Prejudgment Interest

¶28.    The chancellor awarded six percent simple interest from 1996 through 2001, the dates of the Sykes plaintiffs' actual damages; six percent interest compounded annually from 2001, the date the complaint was filed, through date of entry of the final judgement, and six percent simple interest from the date of entry of his final judgment on October 1, 2009.  Pursue argues that prejudgment interest should not have been awarded because the complaint is a contract dispute and there is no evidence that Pursue acted in bad faith.  Pursue further argues that, if this Court finds that the award is proper, the award should be simple rather than compound interest.  The Sykes plaintiffs argue that, pursuant to Mississippi Code Section 53-3-39, the chancellor was correct in awarding prejudgment interest, but they argue that the entire award should accrue eight percent compound interest.

### A. Application of Section 53-3-39

¶29.    This Court must determine whether Mississippi Code Section 53-3-39 is applicable to the instant case.  The pertinent part of Section 53-3-39 provides:

> Purchasers of oil or gas production from any oil or gas well shall be liable for the payment of interest on royalty proceeds which have not been disbursed to the royalty owners from and after one hundred twenty (120) days following the date of the first sale of oil or gas.
> The rate of interest shall be eight percent (8%) per annum and shall be computed from the date of one hundred twenty (120) days after such first sale.

Miss. Code Ann. § 53-3-39 (Rev. 2003).

¶30.    In *First National Bank of Jackson v. Pursue Energy Corporation*, 799 F. 2d 149 (5th Cir. 1986), First National Bank of Jackson sued Pursue for sulfur royalties.  The issue in *First National* was whether royalties attributable to the end-product elemental sulfur

12

recovered from the sour gas were due under the gas-royalty clause or under the "sulfur, mined and marketed" royalty clause. *Id*. at 150. Pursue argued that the royalties attributable to recovered sulfur were payable under the "sulfur, mined and marketed" clause. Pursue had paid royalties under the "sulfur, mined and marketed" clause, but had paid no royalties based on recovered sulfur. *Id*. The federal court found that Pursue had withheld royalties due and entered a judgment in favor of First National. *Id*. The court found Section 53-3-39 to be applicable and held Pursue liable for prejudgment interest on royalties not disbursed. *Id*. at 153-54.

¶31.    Pursue argues that the facts of the instant case are distinguishable from *First National*. Pursue argues that royalty payments were timely disbursed and never withheld. In *Piney Woods*, the court held that royalty owners were entitled to be paid royalties based on the market value of the gas, and then remanded the case for a hearing on damages. Subsequently, in determining damages, the district court held that Section 53-3-39 was not applicable and prejudgment interest should not be awarded, because the claims were based upon sales revenue that was never actually received. The Fifth Circuit affirmed the district court. *Piney Woods Country Life Sch. v. Shell Oil Co.*, 218 F.3d 744 (5th Cir. 2000).

¶32.    In the instant case, the chancellor held that Section 53-3-39 was not applicable pursuant to *Piney Woods*. We disagree and find that the facts of the instant case are more similar to those of *First National*. In order to recover the costs of operation and its investment, Pursue implemented an equation that contained two primary components. The first component consisted of the actual capital investment combined with a return on that investment, and the second component represented the cost per day of operating the plant.

13

Using this formula, Pursue deducted processing costs from its royalty owners' checks. Thus, Pursue actually received the revenue that the chancellor held to be unreasonable. Because the revenue was received by Pursue, Pursue did not underpay the royalty owners as in *Piney Woods*, but withheld royalty payments. Therefore, Section 53-3-39 is applicable, and the award of prejudgment interest from 1996 through the date of entry of the final judgment should be affirmed. However, pursuant to Section 53-3-39, the chancellor erred in assessing the interest rate at six percent. The statute specifically requires that the rate of interest shall be eight percent per annum.

### B. Interest Calculation

¶33. Pursue argues that the chancellor erred in compounding the interest. The common-law rule is that "when interest is allowable, it is to be computed on a simple rather than compound basis in the absence of an express authorization otherwise." *Greenville Riverboat, LLC v. Less, Getz & Lipman, P.L.L.C.*, 131 F. Supp. 2d 842, 849 (S.D. Miss. 2000) (applying Mississippi law).

¶34. In *Stovall v. Illinois Gulf Railroad Co.*, 722 F. 2d 190 (5th Cir. 1984), the court, applying Mississippi law, distinguished between Mississippi Code Sections 75-17-1(1) and 75-17-7 and held that interest is to be computed on a simple basis unless the statute specifically states otherwise. *Id*.

¶35. Section 75-17-1(1), as amended in 1974 and applicable at the time of the 1981 judgment, stated, "the legal rate of interest on all notes, accounts and contracts shall be six percent (6%) per annum, calculated according to the actuarial method . . . ." The court acknowledged that "according to the actuarial method" has the technical meaning that

14

interest be computed at the specified rate, compounded annually. While Section 75-17-7, as amended in 1975, stated, "All judgments and decrees founded on any contract shall bear interest at the same rate as the contract . . . . All other judgments and decrees shall bear interest at the rate of eight percent (8%) per annum."

¶36.  The court determined that, under Mississippi law applicable at the time of judgment, Section 75-17-7 awarded interest on a simple-interest basis. Unlike Section 75-17-1(1), Section 75-17-7 did not authorize computation on a compound, instead of simple-interest, basis.

¶37.  This Court relied on the Fifth Circuit's interpretation in *Stovall* in *Dedeaux Utility Co., Inc. v. City of Gulfport*, 938 So. 2d 838 (Miss. 2006).  *Dedeaux* involved the awardability of interest in eminent domain actions.  In *Dedeaux*, the trial court ordered the defendant to pay eight percent  per annum compound interest on the amount of the award from the date of filing of the complaint until the date of entry of the judgment, along with simple interest of eight percent per annum after the entry of the judgment.  On appeal, this Court recognized that the eminent domain statutory scheme had a specific provision for interest on eminent domain judgments.

¶38.  Mississippi Code Section 11-27-19 provides as follows: "Any judgment finally entered in payment for property to be taken shall provide legal interest on the award of the jury from the date of the filing of the complaint until payment is actually made . . . ." Miss. Code Ann. § 11-27-19 (Rev. 2004).  Because the statute called for the payment of "legal interest" and not interest calculated "according to the actuarial method," this Court determined that "legal interest" is not compounded, but is, rather, simple interest.

15

Furthermore, the statute provided no distinction between prejudgment interest and post-judgment interest. Thus, this Court reversed the trial court and held that the trial court erred when it compounded the interest and made a distinction between prejudgment interest and post-judgment interest. *Id*. at 846 (¶28).

¶39. For reasons similar to those in *Dedeaux*, any interest awarded under Section 53-2-39 should be simple interest only. Section 53-3-39 states that the "rate of interest shall be 8% per annum." Miss. Code Ann. § 53-3-39 (Rev. 2003). There is no provision for calculation "according to the actuarial method." Thus, the statute requires that any award of interest is to be calculated using the simple method. Furthermore, the statute provided no distinction between prejudgment interest and post-judgment interest.

¶40. The Sykes plaintiffs argue that the award of interest, including whether it is awarded on a simple or compound basis, is within the chancellor's discretion. Thus, the Sykes plaintiffs argue that the award of compound interest is proper. The Sykes plaintiffs rely on *Guardianship of Duckett v. Duckett*, 991 So. 2d 1165 (Miss. 2008), in which this Court held that the trial courts have discretion under Mississippi Code Section 75-17-7 to award compound interest. This Court stated:

> The statute clearly grants trial courts the discretion to set the rate of prejudgment interest: "All other judgments or decrees shall bear interest at a per annum rate set by the judge. . . ." Miss. Code Ann. § 75-17-7 (Rev. 2000). The fact that Section 75-17-7 grants trial courts the discretion to set the rate of prejudgment interest suggests that the legislature also intended in enacting this statute to grant trial courts the discretion to calculate prejudgment interest on a simple or compound basis. *See Lindsey v. Lindsey*, 219 Miss. 540, 546, 69 So. 2d 203, 205 (1954) ("That which is implied in the statute is as much a part of it as that which is expressed.") (internal quotation marks and citations omitted); *Peets v. Martin*, 135 Miss. 720, 729, 101 So. 78, 80 (1924) (holding that powers not expressly granted by statute may "arise by implication"). In

16

fact, our Court of Appeals stated that "Section 75-17-7 . . . allows the trial court to set the rate and in effect the method of its calculation." ***Estate of Baxter v. Shaw***, 797 So. 2d 396, 407 (2001).

*Id*.

¶41.   However, as mentioned above, the principles of judicial discretion on which the Court relied do not apply to Section 53-3-39.  Section 53-3-39 does not provide for an interest rate to be "set by the judge."  The plain and unambiguous language of Section 53-3-39 provides that the "rate of interest shall be 8% per annum" with no authorization for the interest to be computed on a compound- instead of a simple-interest basis.  Miss. Code Ann. § 53-3-39 (Rev. 2003).

¶42.   Accordingly, we find that Section 53-2-39 applies, and the chancellor erred when he compounded the interest and when he made a distinction between prejudgment interest and post-judgment interest.

## VI.  Statute of Limitations

¶43.   Pursue argues that the Sykes plaintiffs' claims, in part, are barred by the three-year statute of limitations.  The Sykes plaintiffs argue that the statute of limitations was tolled by Mississippi Code Section 15-1-67, which states:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be or with reasonable diligence might have been, first known or discovered.

Miss. Code Ann. § 15-1-67 (Rev. 2003).

¶44.   Section 15-1-67 requires proof that "(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on their part to discover

17

it." ***Channel v. Loyacono***, 954 So. 2d 415, 423 (Miss. 2007). The record indicates that both requirements were satisfied.

¶45.    Pursue concealed its use of Shell's previously recovered $41 million plant-investment charge as part of Pursue's gas-processing formula. Pursue's witnesses testified that check stubs were provided to royalty owners, and the check stubs reflected only a deduction for Pursue's gas-processing fees. Pursue's witnesses further testified that the gas-processing fee included a deduction for the $41 million capital investment, but the specific deductions were not itemized and could not be determined from the check stubs. Furthermore, royalty owners who attempted to obtain information from Pursue were given incorrect information. When the Sykes plaintiffs wrote Pursue inquiring about the processing charges, Pursue responded by stating that all owners were charged a fee equal to the cost of removing agents from the gas to make it marketable. Finally, the record indicated that royalty owners who were knowledgeable of the oil and gas industry were charged a lesser amount, and the remaining royalty owners were charged a greater proportion of the costs that were recovered. Because the record indicated that Pursue negotiated with people who were in the oil and gas business for a lesser amount, the chancellor held that Pursue's conduct was willful, malicious, and intentional.

¶46.    Accordingly, the chancellor was correct in declining to apply the statute of limitations to claims accruing more than three years prior to the filing of the complaint and amended complaint.

**CONCLUSION**

18

¶47. The final judgement of the chancellor is affirmed as it relates to actual damages, attorneys' fees, and litigation expenses. However, the chancellor erred in failing to apply Section 53-3-39, compounding the interest and making a distinction between prejudgment interest and post-judgment interest. Thus, we affirm in part, and reverse and remand for recalculation of damages consistent with this opinion.

¶48. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. DICKINSON, P.J., AND LAMAR, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**