**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 30, 2013

No. 12-30934

Lyle W. Cayce
Clerk

GLORY TRUONG,

Plaintiff - Appellant

v.

BANK OF AMERICA, N.A.; WELLS FARGO BANK, N.A., As Trustee For the Benefit of the Certificate Holders Asset-backed Pass-through Certificates Series 2004-WCW1,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, DAVIS, and ELROD, Circuit Judges.

KING, Circuit Judge:

Plaintiff-Appellant brought a diversity action against two national banking associations, alleging violations of Louisiana consumer protection law in connection with a mortgage foreclosure proceeding. Plaintiff-Appellant sought damages and declaratory relief. The district court dismissed the action in part pursuant to the *Rooker-Feldman* doctrine and in part for failure to state a claim because of a statutory exemption under Louisiana law. For the reasons that follow, we AFFIRM the district court's judgment.

No. 12-30934

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2011, Plaintiff-Appellant Glory Truong filed this diversity action against Defendants-Appellees Bank of America, N.A. ("BOA") and Wells Fargo Bank, N.A. ("Wells Fargo"), alleging that they had violated the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. Rev. Stat. Ann. §§ 51:1401–:1430, in prosecuting a state-court foreclosure action that resulted in the seizure and sale of Truong's home.

As alleged, Truong took out a mortgage loan to purchase a home in Marrero, Louisiana. According to the complaint, the "loan was securitized, a process whereby the right to payment was transferred to an asset backed security, a bond" for which Wells Fargo eventually became the trustee. On June 17, 2010, Wells Fargo filed in state court a "Petition for Mortgage Foreclosure By Executory Process Without Appraisal" as to Truong's home. *See* 1A Frank L. Maraist, Louisiana Civil Law Treatise: Civil Procedure – Special Proceedings § 3.1 (2012) ("The essence of executory process is that a creditor whose debtor has confessed judgment in advance may obtain immediate seizure and prompt judicial sale of the security by submitting sufficient proof to the court."). Included with the foreclosure petition were a copy of the note underlying Truong's mortgage loan and an assignment of the note to Wells Fargo. Also included with the foreclosure petition was the affidavit of Kathy Repka (an employee of the bond servicer), in which Repka represented that Truong had defaulted on her mortgage obligations. Implicitly finding this evidence to be authentic, as Louisiana law requires, the state court issued a Writ of Seizure and Sale as to Truong's home on June 30, 2010. *See* La. Code Civ. Proc. Ann. arts. 2635, 2638.

About thirteen months after Wells Fargo filed the foreclosure petition, Truong applied to BOA for a loan modification under the Home Affordable Modification Program ("HAMP")—a federal program meant to help "homeowners

2

on the verge of foreclosure to modify their loans to an affordable level." *Loan Modification Grp., Inc. v. Reed*, 694 F.3d 145, 147 (1st Cir. 2012). BOA allegedly represented to Truong that the foreclosure process would be stayed pending approval or rejection of her application. Less than two months later, Truong followed up with BOA regarding her HAMP application, and was told that BOA had not received it. She submitted a second application, and was again told that the foreclosure process would be stayed. Although not alleged in Truong's complaint, this apparently caused her to forego an injunction proceeding, whereby a mortgagor can challenge the authenticity of evidence supporting the use of executory process, and thus potentially arrest the seizure and sale of her property. *See* La. Code Civ. Proc. Ann. art. 2751. This proceeding can no longer be initiated once the property has been sold.[1] *Id.* art. 2752. Less than one month after Truong submitted her second HAMP application, Wells Fargo purchased her home at a sheriff's sale of which Truong supposedly had never been notified. She further alleged that because Wells Fargo was not the mortgage bond's servicer, it was not authorized to initiate foreclosure proceedings under the bond's "Pooling and Service Agreement."

Truong asserted three claims in the instant suit, the first two of which arose under LUTPA. Truong alleged that Wells Fargo's and BOA's "unfair and deceptive" acts resulted in wrongful foreclosure on her mortgage loan. In her first claim for relief, Truong alleged that the assignment of the note attached to the foreclosure petition was not properly endorsed to Wells Fargo, and therefore

---

[1] After this point, the state court's order to issue a writ of seizure and sale becomes a final judgment for res judicata purposes. *See Countrywide Home Loans Servicing, LP v. Thomas*, No. 2012-CA-1304, 2013 WL 1150496, at *4 (La. Ct. App. Mar. 20, 2013). A mortgagor may nonetheless initiate in the issuing court an action to annul the sale if the judgment was "obtained by fraud or ill practices." La. Code Civ. Proc. Ann. art. 2004. "Objections as to the lack of authentic evidence or as to minor defects of form or procedure may not be used as ground for an action to annul a judicial sale of immovable property by executory process." *Deutsche Bank Nat'l Trust Co. v. Carter*, 59 So. 3d 1282, 1286 (La. Ct. App. 2011).

No. 12-30934

Wells Fargo lacked standing to seek executory process against her. In her second claim for relief, Truong alleged that BOA misled her into believing it would process her HAMP application and falsely told her that no sale would be scheduled until the HAMP process was completed. She further alleged that the Repka affidavit was not authentic evidence because Repka was a known "robo-signer" who had not reviewed any documents respecting Truong's indebtedness or default and was not authorized to give such testimony.[2] In her final claim for relief, Truong sought a declaration under 28 U.S.C. § 2201 that the use of executory process in the foreclosure action was inappropriate because Wells Fargo and BOA had failed to include all necessary authentic evidence required by Louisiana law. As relief, Truong sought damages for economic loss; compensatory, statutory, and punitive damages for mental anguish, humiliation, embarrassment, and loss of enjoyment of life; fees and costs; punitive damages; interest on the judgment, and a declaratory judgment.

Wells Fargo and BOA moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c). The district court dismissed most of Truong's claims "with prejudice" for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, which bars federal courts from adjudicating claims where the plaintiff seeks to overturn a state-court judgment. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The district court held that *Rooker-Feldman* applied to Truong's LUTPA claims against Wells Fargo, to her claims based on Repka's alleged acts, and to her claims based on allegations that she had not been notified of the foreclosure. It reasoned that these claims were inextricably

---

[2] The allegation respecting Repka's affidavit is used to support Truong's LUTPA claim against BOA. Truong's theory of liability appears to be based on *respondeat superior* and corporate veil-piercing. As alleged, Repka worked for BAC Home Loans Servicing, LP, which is a BOA subsidiary that Truong did not name as a defendant.

intertwined with and required review of the state-court foreclosure judgment. With respect to Truong's claim that BOA misled her about processing her HAMP application, the district court held that Truong failed to state a claim for relief because BOA was exempt from LUTPA liability due to a statutory exemption. Although the court gave Truong twenty days to amend her complaint with respect to the HAMP-related claims, Truong did not do so. After the deadline expired, the court entered final judgment against Truong.

## II. STANDARD OF REVIEW

We review de novo a district court's dismissal for lack of subject matter jurisdiction or failure to state a claim. *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 421 (5th Cir. 2013). A Rule 12(c) motion "is subject to the same standards as a motion to dismiss under Rule 12(b)(6)." *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209–10 (5th Cir. 2010).

A federal court sitting in diversity applies the forum state's substantive law. *Coe v. Chesapeake Exploration, L.L.C.*, 695 F.3d 311, 316 (5th Cir. 2012). When construing a state statute absent explicit state-court guidance, "we must attempt to predict state law, not to create or modify it." *Id.* (citation omitted).

## III. DISCUSSION

### A. *Rooker-Feldman*

Because the *Rooker-Feldman* doctrine is jurisdictional, we must address this issue first. *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011). "Reduced to its essence, the *Rooker-Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments" except when authorized by Congress. *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004) (internal quotation marks and citation omitted); *see generally* 18B Charles Alan Wright et al., *Federal Practice and Procedure* § 4469.1 (2d ed. 2002 & Supp. 2012). The Supreme Court has explained that the doctrine is a narrow one and "is confined to . . . cases brought

by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Supreme Court has cautioned that in light of the "narrow ground" *Rooker-Feldman* occupies, it does not prohibit a plaintiff from "present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* at 284, 293 (quoting *GASH Assocs. v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993)). In these circumstances, state-law preclusion principles control. *Id.* at 293; *see also Lance v. Dennis*, 546 U.S. 459, 466 (2006) ("*Rooker-Feldman* is not simply preclusion by another name.").

One hallmark of the *Rooker-Feldman* inquiry is what the federal court is being asked to review and reject. *See Exxon Mobil*, 544 U.S. at 284. A federal district court lacks jurisdiction "over challenges to *state court decisions in particular cases* arising out of *judicial proceedings*." *Feldman*, 460 U.S. at 486 (emphasis added); *accord GASH Assocs.*, 995 F.2d at 728. Thus, the rule does not prohibit a district court from reviewing non-state court decisions. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) (review of executive action). It also does not bar a challenge to a rule on which a judicial decision was based if the rule was "promulgated in a non-judicial proceeding." *Feldman*, 460 U.S. at 486; *see also Skinner v. Switzer*, 131 S. Ct. 1289, 1297–98 (2011) (*Rooker-Feldman* does not bar a federal plaintiff's constitutional challenge to a state statute after a state court has construed the statute adversely to the plaintiff). Thus, in *Feldman*, the district court could not hear a bar examination applicant's claim that the District of Columbia Court of Appeals had violated his due process rights by acting arbitrarily and capriciously in rejecting his petition. 460 U.S. at 486–87. The district court could, however, hear his constitutional challenge to the bar admissions rule the Court of Appeals had applied in

No. 12-30934

reaching its decision. *Id.* at 487; *see also Doe v. Fla. Bar.*, 630 F.3d 1336, 1341–42 (11th Cir. 2011) (*Rooker-Feldman* bars as-applied constitutional challenges, but not facial challenges); *Kastner v. Tex. Bd. of Law Exam'rs*, 408 F. App'x 777, 779 (5th Cir. 2010) (same).

The second hallmark of the *Rooker-Feldman* inquiry is the source of the federal plaintiff's alleged injury. *See Exxon Mobil*, 544 U.S. at 284. In a decision that the *Exxon Mobil* Court cited with approval, the Ninth Circuit held that

> [i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003); *see also Morris v. Am. Home Mortg. Servicing, Inc.*, 443 F. App'x 22, 24 (5th Cir. 2011) (federal plaintiff's claim that a foreclosure judgment is unlawful is barred "because he is complaining of injuries caused by the state court judgments"); *Scott v. Fortenberry*, 278 F. App'x 440, 441 (5th Cir. 2008) (*Rooker-Feldman* does not bar a § 1983 plaintiff's claim for damages arising from court reporter's failure to prepare a trial transcript and consequent delay of his criminal appeal because the suit did not challenge his conviction); *Mosley v. Bowie Cnty. Tex.*, 275 F. App'x 327, 328–29 (5th Cir. 2008) (*Rooker-Feldman* bars a claim that a state child support order is void, but not a claim that state government defendants violated the federal plaintiffs' constitutional rights in the course of enforcing the order).

In sum, Truong has alleged that BOA and Wells Fargo (1) misled the state court into thinking that the executory process evidence was authentic when, in fact, it was not; and (2) misled her into foregoing her opportunity to dispute authenticity in the state-court proceedings. These are independent claims over

which the district court had jurisdiction; Truong did not seek to overturn the state-court judgment, and the damages she requested were for injuries caused by the banks' actions, not injuries arising from the foreclosure judgment.[3] *See* La. Rev. Stat. Ann. § 51:1409(A) (providing damages for "the use or employment by another person of an unfair or deceptive method, act or practice"); *Drake v. St. Paul Travelers Ins. Co.*, 353 F. App'x 901, 905 (5th Cir. 2009) (*Rooker-Feldman* does not bar state-court loser's claim for damages as to state-court winner's allegedly fraudulent statements in state-court litigation); *see also Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 391 (5th Cir. 2012) (*Rooker-Feldman* does not bar a claim that the state-court plaintiffs' lawyers obtained a settlement judgment through fraudulent misrepresentations); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 162, 171 (3d Cir. 2010) (*Rooker-Feldman* does not bar a federal plaintiff's claims that the defendants had conspired to engineer its loss in state court by exercising improper influence on state judges); *McCormick v. Braverman*, 451 F.3d 382, 392–93, 395–96 (6th Cir. 2006) (*Rooker-Feldman* does not bar claims that state-court opponents committed fraud and abuse of process, but does bar a claim that an adverse receivership order was illegal); *cf. Price v. Porter*, 351 F. App'x 925, 926–27 (5th

---

[3] There is, of course, no general rule that *any* claim that relies on a fraud allegation is an "independent claim" for *Rooker-Feldman* purposes. *See Magor v. GMAC Mortg., L.L.C.*, 456 F. App'x 334, 336 (5th Cir. 2011) (*Rooker-Feldman* bars a claim that a state foreclosure judgment was procured through fraud because "reversal of the state court's foreclosure judgment would be a necessary part of the relief requested"); *Turner v. Cade*, 354 F. App'x 108, 110–11 (5th Cir. 2009) (*Rooker-Feldman* bars a claim that a state-court divorce decree was procured through fraud when the federal plaintiff asked the decree be declared void); *Turner v. Chase*, 334 F. App'x 657, 659–60 (5th Cir. 2009) (*Rooker-Feldman* bars a federal suit in which the plaintiff alleges fraud "and, ultimately, seeks to nullify the state-court judgment averse to her"); *Sookma v. Millard*, 151 F. App'x 299, 300–01 (5th Cir. 2005) (*Rooker-Feldman* bars a federal plaintiff's claim that her state-court opponents and state judges conspired to deprive her of civil rights when she sought to enjoin enforcement of a state divorce decree); *United States v. Shepherd*, 23 F.3d 923, 924–25 (5th Cir. 1994) (*Rooker-Feldman* prohibits a district court from voiding state foreclosure judgments, notwithstanding claims that the judgments were fraudulently procured).

No. 12-30934

Cir. 2009) (*Rooker-Feldman* bars due process and equal protection claims that a state-court judge should have recused himself due to a conflict of interest). To be sure, the banks' actions allegedly led to a state-court judgment that inflicted further injury on Truong. But as one of our sister circuits has stated, although the damages recoverable through an independent claim might be limited by preclusion principles, "[t]he *Rooker-Feldman* doctrine does not . . . turn all disputes about the preclusive effects of judgments into matters of federal subject-matter jurisdiction."[4] *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 569 F.3d 667, 671 (7th Cir. 2009) (Easterbrook, C.J.)[5]; *see also Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995) (Posner, C.J.) (although an alleged conspiracy cannot result in harm if the resulting state-court judgment is presumed correct, a federal plaintiff can seek to vindicate his right to a judicial proceeding "uncontaminated by politics"); *cf. Morris*, 443 F. App'x at 24 (an otherwise independent claim of unlawful debt collection practices in relation to a foreclosure judgment is barred because the only relief sought "was the setting aside of the state foreclosure judgment and staying of the execution of the writ of possession"). Because Truong did not seek to reverse or void the adverse foreclosure judgment, her request for a declaration that "[Wells Fargo and BOA] lacked the necessary authentic evidence to support the use of executory process" did not deprive the district court of jurisdiction. This conclusion holds even though such a declaration would "den[y] a legal conclusion that a state court has reached in a case to which [Truong] was a party." *Exxon Mobil*, 544 U.S. at 293

---

[4] The Supreme Court's decision in *ASARCO Inc. v. Kadish*, 490 U.S. 605, 622–23 (1989), includes language that, before *Exxon Mobil*, was read by some as making preclusion analysis a part of *Rooker-Feldman* analysis. As the Tenth Circuit has explained, *ASARCO* did not expand *Rooker-Feldman* in this way. *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1145 (10th Cir. 2006); *see also Exxon Mobil*, 544 U.S. at 287 n.2.

[5] Chief Judge Easterbrook also authored an earlier *Rooker-Feldman* decision that the *Exxon Mobil* Court cited with approval. *See* 544 U.S. at 293 (citing *GASH Assocs.*, 995 F.2d at 728).

No. 12-30934

(citation omitted); *see also Weaver*, 660 F.3d at 904 ("[T]he *Rooker-Feldman* doctrine generally applies only where a plaintiff seeks relief that *directly* attacks the validity of an existing state court judgment." (emphasis added)); *Nesses*, 68 F.3d at 1004 ("When a plaintiff seeks to relitigate a suit that has been decided against him, he is not so much attacking as trying to bypass the judgment in that suit; and the doctrine that blocks him is res judicata.").[6]

BOA and Wells Fargo argue that *Rooker-Feldman* bars Truong's claims because they are "inextricably intertwined" with the state-court judgment. As the *Exxon Mobil* Court reiterated, the *Feldman* Court adopted this language only to explain that a "state court loser" cannot invite a federal district court to "sit in direct review of state court decisions" by asserting constitutional claims that the state court had not directly addressed. *Exxon Mobil*, 544 U.S. at 286 n.1; *Feldman*, 460 U.S. at 482 n.16 (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970)). The *Feldman* Court repeated this phrase when this precise situation arose in that case: The federal plaintiff could not assert a claim in federal court that the District of Columbia Court of Appeals's adverse decision deprived him of his constitutional due process rights, even when he had not raised this argument before the Court of Appeals. 460 U.S. at 486–87; *see also Randolph v. Texaco Incorporation*, 471 F. App'x 416, 417 (5th Cir. 2012) (*Rooker-Feldman* bars constitutional claims that "essentially attack[]" a state-court judgment); *Pease v. First Nat'l Bank*, 335 F. App'x 412, 415 (5th Cir. 2009) (*Rooker-Feldman* bars a federal plaintiff's § 1983 claim challenging an adverse foreclosure judgment as a constitutional due process violation). In *Exxon Mobil*'s wake, numerous federal courts of appeal have

---

[6] BOA and Wells Fargo contend that Truong cannot invoke a "fraud exception" to *Rooker-Feldman* because she has not sufficiently alleged fraud. *See* Fed. R. Civ. P. 9(b). As we have explained, there is no such thing as a "fraud exception." The question is whether Truong's claim is an independent claim.

recognized that "inextricably intertwined" does not enlarge the core holding of *Rooker* or *Feldman*. *See Great W. Mining*, 615 F.3d at 169–70; *McCormick*, 451 F.3d at 394–95; *Bolden*, 441 F.3d at 1141; *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006); *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 86–87 (2d Cir. 2005); *see also McKithen v. Brown*, 481 F.3d 89, 97 n.7 (2d Cir. 2007) ("independent claim" and "inextricably intertwined" are simply descriptive labels devoid of substantive content). Moreover, BOA and Wells Fargo concede that the labels "independent claim" and "inextricably intertwined" are mutually exclusive, *see McKithen*, 481 F.3d at 97 n.7, and we have already explained that Truong's claims are independent. Accordingly, BOA and Wells Fargo's invocation of the "inextricably intertwined" label is unavailing.

For the foregoing reasons, we conclude that the district court had jurisdiction to hear Truong's claims, which are "independent claims" for *Rooker-Feldman* purposes.[7] As we will explain, however, Truong's complaint must nonetheless be dismissed for failure to state a claim.

**B. LUTPA**

As noted above, all damages requested by Truong are based on the banks' alleged LUTPA violations. We conclude, however, that LUTPA does not provide Truong an avenue for relief because both BOA and Wells Fargo are exempt from LUTPA claims under La. Rev. Stat. Ann. § 51:1406, which precludes LUTPA

---

[7] The res judicata and collateral estoppel doctrines in Fifth Circuit states embrace issues that have been or should have been raised in earlier proceedings. *See Pursue Energy Corp. v. Abernathy*, 77 So. 3d 1094, 1099–1100 (Miss. 2011); *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007); *Brouillette v. Brouillette*, 18 So. 3d 756, 758 (La. Ct. App. 2009). Accordingly, we anticipate that our decision today will not open the "litigation floodgates." *See Weaver*, 660 F.3d at 905–08 (disposing of case on res judicata grounds when *Rooker-Feldman* did not apply).

liability for various entities, including "[a]ny federally insured financial institution."[8]

The district court held that § 51:1406's exemption from LUTPA applied to Truong's claims against BOA that were related to her HAMP application. Truong does not address the district court's holding in her opening brief. The application of the exemption to BOA on the HAMP-related claims is therefore waived. *See*, *e.g.*, *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 594 (5th Cir. 2006) (failing to raise an argument in an opening brief effectively waives it).

Truong raises several arguments in her reply brief that the statutory exemption of § 51:1406 does not apply to the defendants, but these arguments come too late. *See id.* (refusing to consider argument raised for the first time in a reply brief); *Lockett v. E.P.A.*, 319 F.3d 678, 684 n.16 (5th Cir. 2003) (viewing as waived issue raised for the first time in appellants' reply brief). Moreover, Truong's contentions are unavailing even if we were to consider them. Further, although the district court dismissed only the HAMP-related LUTPA claim under Rule 12(b)(6), it dismissed the remaining LUTPA claims with prejudice, and none of the parties has challenged the "with prejudice" dismissal on appeal. Accordingly, we may affirm the district court's judgment as a dismissal on the merits. Both BOA and Wells Fargo sought dismissal pursuant to the exemption below and on appeal. *See Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

---

[8] The statute provides:

The provisions of this Chapter shall not apply to:

(1) Any federally insured financial institution, its subsidiaries, and affiliates or any licensee of the Office of Financial Institutions, its subsidiaries, and affiliates or actions or transactions subject to the jurisdiction of the Louisiana Public Service Commission or other public utility regulatory body, the commissioner of financial institutions, the insurance commissioner, the financial institutions and insurance regulators of other states, or federal banking regulators who possess authority to regulate unfair or deceptive trade practices.

La. Rev. Stat. Ann. § 51:1406.

Although BOA and Wells Fargo are both federally chartered banks insured by the Federal Deposit Insurance Corporation, Truong contends that they cannot fall under the statutory exemption in light of LUTPA's history. The exemption formerly applied only to "[a]ctions or transactions subject to the jurisdiction of" the regulatory bodies identified in the exemption's current version. *Daigle v. Trinity United Mortg., L.L.C.*, 890 So. 2d 583, 590 (La. Ct. App. 2004). A Louisiana appellate court held in 2005 that the exemption did not apply to foreclosure activity because such activity was "outside the regulatory authority of the state and federal banking agencies." *Levine v. First Nat'l Bank of Commerce*, 917 So. 2d 1235, 1241 (La. Ct. App. 2005), *aff'd in part and rev'd in part by* 948 So. 2d 1051 (La. 2006). On June 2, 2006, however, the Louisiana Legislature amended LUTPA to exempt "[a]ny federally insured financial institution" and "any licensee of the Office of Financial Institutions." 2006 La. Sess. Law Serv. 285 (West). Following this amendment, the Louisiana Supreme Court partially reversed the Court of Appeal's 2005 decision in *Levine*, holding that the defendant bank's conduct did not violate LUTPA. *Levine*, 948 So. 2d at 1066 ("Our finding that the Bank's seizure of Dr. Levine's property was not wrongful eliminates any basis for the Bank's liability to Dr. Levine pursuant to LUTPA.").

Truong submits that because the Louisiana Supreme Court disposed of *Levine* on the merits instead of through application of the LUTPA exemption, the Court of Appeal's holding respecting the exemption remains intact. Truong misconstrues the state court's decision. The Louisiana Supreme Court held that under federal law—which preempts otherwise applicable state law—the defendant bank's actions were not wrongful. *Id.* at 1064–65. Because allowing the plaintiff to proceed under LUTPA would "circumvent federal law," the court concluded that the absence of a wrongful act under federal law precluded LUTPA liability. *Id.* at 1066. Accordingly, we do not view the Louisiana Supreme

13

Court's post-amendment decision as an endorsement of the Court of Appeal's pre-amendment interpretation of the LUTPA exemption. The 2006 LUTPA amendment obviously broadens the exemption's application beyond the Court of Appeal's holding in *Levine*. *See Caillet v. Regions Fin. Corp.*, 282 F.R.D. 406, 413 (W.D. La. 2012); *Cope v. Citimortgage, Inc.*, No. 2:10 CV 922, 2010 WL 4976868, at *1 (W.D. La. Dec. 1, 2010); *Fitch v. Wells Fargo Bank, N.A.*, 709 F. Supp. 2d 510, 517 (E.D. La. 2010); *Whittington v. Patriot Homes, Inc.*, Nos. 06-1068, 06-2129, 2008 WL 1736821, at *3 (W.D. La. Apr. 11, 2008).

Truong also asks us to hold that the exemption does not apply to BOA or Wells Fargo because courts "routinely find exceptions to bank exemptions under state unfair and deceptive trade practice statutes." *See Heastie v. Cmty. Bank of Greater Peoria*, 690 F. Supp. 716 (N.D. Ill. 1988); *Vogt v. Seattle-First Nat'l Bank*, 817 P.2d 1364 (Wash. 1991); *Plaza Nat'l Bank v. Walker*, 767 S.W.2d 276 (Tex. App.—Beaumont 1989, writ denied); *Ashlock v. Sunwest Bank of Roswell, N.A.*, 753 P.2d 346 (N.M. 1988), *overruled on other grounds by Gonzales v. Surgidev Corp.*, 899 P.2d 576 (N.M. 1995); *Raymer v. Bay State Nat'l Bank*, 424 N.E.2d 515 (Mass. 1981). The decisions she offers provide no basis for an exception. They concern either federal preemption of state law (which is not at issue here) or statutory exemptions narrower than LUTPA's exemption of "any federally insured financial institution."

Truong further argues that the exemption does not apply because, as relevant to her claims, BOA and Wells Fargo did not act in their capacities as banks, but instead as a mortgage servicer (BOA) and bond trustee (Wells Fargo). Louisiana's rules of statutory construction prohibit us from adopting Truong's interpretation. Under Louisiana law, "[w]hen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La. Rev. Stat. Ann. § 1:4; *State v. R.W.B.*, 105 So. 3d 54, 56 (La. 2012) (per curiam). The Louisiana Legislature has decided that LUTPA

should not apply to "[a]ny federally insured financial institution, its subsidiaries, and affiliates," and has not set out any exception to this broad rule. La. Rev. Stat. Ann. § 51:1406(1); *see also Crier v. Whitecloud*, 496 So. 2d 305, 309–10 (La. 1986) (the legislature may "restrict causes of action" or "creat[e] various areas of statutory immunity from suit"). Because the statutory language is unambiguous, we cannot look behind the text to determine if it properly gives effect to LUTPA's "spirit," nor may we hold that the exemption is overbroad. *See Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978); *R.W.B.*, 105 So. 3d at 57 ("[I]t is not this court's role to consider the policy or the wisdom of the legislature in adopting a statute.").

Finally, Truong asks us to hold that she pleaded sufficient facts to state a cause of action for wrongful seizure under Louisiana law. Because she did not seek to add this claim below, even when the district court gave her ample opportunity to do so following the dismissal of her claims, we perceive no error. *See Gabel v. Lynaugh*, 835 F.2d 124, 125 (5th Cir. 1988) (per curiam) ("Generally speaking, we are a court of errors and appeals; and the trial court cannot have erred as to matters which were not presented to it.").

## C.    Declaratory Judgment Claim

Truong's declaratory judgment claim—requesting a "declaration that [BOA and Wells Fargo] lacked the necessary authentic evidence to support the use of executory process"—can be dismissed under Louisiana preclusion principles. *See Exxon Mobil*, 544 U.S. at 293. BOA and Wells Fargo argued below and on appeal that res judicata bars Truong's claim.[9] *See Cuvillier*, 503 F.3d at 401. In Louisiana, res judicata embraces both claim preclusion and issue preclusion, and thus "has two different aspects: 1) foreclosure of relitigating matters that have

---

[9] As we discussed above, the district court dismissed Truong's complaint with prejudice, which none of the parties have challenged. Accordingly, we can affirm the district court's judgment as a merits dismissal.

never been litigated but should have been advanced in the earlier suit; and 2) foreclosure of relitigating matters that have been previously litigated and decided." *In re Interdiction of Stephens*, 930 So. 2d 1222, 1226 (La. Ct. App. 2006) (quotation omitted). Because issuance of a writ of seizure and sale requires a Louisiana judge to determine that the executory process evidence submitted with a foreclosure petition is authentic, *see* La. Code Civ. Proc. Ann. arts. 2635, 2638, the object of Truong's declaratory judgment claim has already been decided in a judicial proceeding. Moreover, if authenticity is to be challenged, this must be done in an injunction proceeding in the court that ordered the writ to be issued. *Deutsche Bank*, 59 So. 3d at 1286; *Citizens Bank & Trust Co. v. Little Ford, Inc.*, 522 So. 2d 1124, 1133 (La. Ct. App. 1988). Both in the proceedings below and on appeal, Truong has not disputed that her claim satisfies the requirements for res judicata under Louisiana law. *See Countrywide Home Loans Servicing*, 2013 WL 1150496, at *3–4. Accordingly, her declaratory judgment claim is barred.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.