**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

August 21, 2015

Lyle W. Cayce
Clerk

—————

No. 14-40259

—————

LAND AND BAY GAUGING, L.L.C.; 5302 MANDELL PROPERTY, L.P.;
5302 MANDELL PROPERTY I, L.L.C.; 500 N. WATER STREET PROPERTY
I, L.L.C.; 500 N. WATER STREET PROPERTY, L.P.; 5262 STAPLES,
LIMITED; 5262 STAPLES GP, L.L.C.; 5262 STAPLES II, LIMITED;
BISTRO CP, L.L.C.; BLACK COMMERCIAL HOLDINGS, L.L.C.; BLACK
ENERGY RESOURCES COMPANY; BNP EXPLORATION COMPANY;
CCEX, L.L.C.; INTREPID OIL AND GAS CORPORATION; RPH
FINANCIAL INVESTMENTS CORPORATION; HBP, LIMITED; BNP
COMMERCIAL PROPERTIES, LIMITED; BNP HOLDINGS, LIMITED;
BNP HOLDINGS III, LIMITED; TSE EQUITIES I, L.L.C.; TSE EQUITIES
COMPANY, LIMITED; PBF INVESTMENTS, LIMITED; BNP
MANAGEMENT, L.L.C.; WENDY BENNETT BLACK;,

          Plaintiffs–Appellants,

v.

TOBY SHOR; DOUGLAS ALLISON; RICHARD DALY,

          Defendants–Appellees.

*********************************************************************
PAUL BLACK,

          Plaintiff–Appellant,

v.

TOBY SHOR, Individually and as Trustee for Seashore Investments
Management Trust; RICHARD DALY; DOUGLAS ALLISON, TOBY SHOR,
as Trustee of the Toby Shor 2004 Grant Trust;

          Defendants–Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 7:12-CV-423; 2:12-CV-255

---

Before JONES, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:*

Paul Black and Toby Shor were business partners whose business relationship soured. A Texas state court entered judgment on a $31 million arbitration award for Shor arising from a business dispute with Black. The state court also ordered Black to turn over assets to Shor. Black sued Shor separately in federal court alleging in essence that Shor and her lawyers illegally conspired with the state-court judge to obtain the turnover orders in violation of Texas and federal law. The district court dismissed most claims for lack of jurisdiction under *Rooker–Feldman* and declined to continue to exercise its supplemental jurisdiction over the remaining state law claims. We hold that the district court construed the *Rooker–Feldman* doctrine too broadly to deprive it of federal jurisdiction. Accordingly, we modify the judgment of the district court to reflect a dismissal on the merits of the 42  U.S.C. § 1983 and Computer Fraud and Abuse Act claims; we vacate the dismissal of the state-law abuse-of-process and tortious-interference claims; we dismiss without prejudice the remaining state-law claims under 28 U.S.C. § 1367(c)(3); and we affirm in all other respects.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves numerous parties: all are entities, family members, and attorneys controlled by or related to Plaintiff–Appellant Paul Black or

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40259

Defendant–Appellee Toby Shor. At its core, this appeal is the latest episode in an ongoing dispute between Black and Shor, so for convenience, we refer at times to the opposing sides collectively as "Black" and "Shor."

Black and Shor were business partners whose relationship broke down. Shor obtained a $31 million arbitration award against Black arising from a business dispute. Shor initiated collections proceedings on the arbitration award in Texas state court, and the trial court entered judgment and issued three orders under the Texas Turnover Statute, Texas Civil Practice & Remedies Code § 31.002. Black appealed the judgment on the arbitration award and the turnover orders.

While the case was on appeal in Texas state court, Black filed two lawsuits in federal court, which form the basis of this appeal. Black asserted various claims arising from his general allegations of a corrupt conspiracy between Shor's attorneys and the state-court trial judge in procuring the turnover orders. The district court stayed the federal actions pending the state-court appeal.

In two opinions issued on the same day, the state appellate court affirmed the arbitration award but invalidated the three turnover orders. *Black v. Shor*, 443 S.W.3d 154, 167 (Tex. App.—Corpus Christi 2013, pet. denied); *Black v. Shor*, 443 S.W.3d 170, 182 (Tex. App.—Corpus Christi 2013, no pet.).[1]

The federal district court then consolidated the separate federal cases and granted Defendants–Appellees' motions to dismiss in part. The district court held that *Rooker–Feldman* barred federal jurisdiction over the

---

[1] The state appellate court vacated one of the turnover orders because it was entered in violation of a bankruptcy stay, *Black*, 443 S.W.3d at 179–80, and reversed the remaining two orders because the trial court issued them without first receiving any evidence, *id.* at 180–81. The court remanded for the trial court to apply proper procedures to Shor's requests for the remaining two turnover orders. *See id.* at 181–82.

conversion, tortious-interference, abuse-of-process, restitution, wrongful execution, Computer Fraud and Abuse Act, equitable-estoppel, judgment-forfeiture, and § 1983 claims. The court then dismissed the sole remaining federal claim, for violation of the Sherman Antitrust Act, under Federal Rule of Civil Procedure 12(b)(6) and declined to continue to exercise supplemental jurisdiction over the remaining state-law claims. Plaintiffs–Appellants timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had federal-question and supplemental jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). We have jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

We review de novo a district court's dismissal for lack of subject-matter jurisdiction under *Rooker–Feldman* and Rule 12(b)(1), and for failure to state a claim under Rule 12(b)(6), applying the same standards as the district court. *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381 (5th Cir. 2013). We review a dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction under the same pleading standard as a dismissal under Rule 12(b)(6). *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). In reviewing the complaint, "we take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Id.*

## III. DISCUSSION

The principal issue in this appeal is whether the district court properly dismissed almost all of Plaintiffs–Appellants' claims on jurisdictional grounds as barred by the *Rooker–Feldman* doctrine. Because the applicability of the *Rooker–Feldman* doctrine is jurisdictional, *Truong*, 717 F.3d at 381–82, we must decide this issue first before analyzing under Rule 12(b)(6) the merits of any claims over which we have jurisdiction.

No. 14-40259

## A.     Applicability of the *Rooker–Feldman* Doctrine

The *Rooker–Feldman* doctrine[2] establishes a limit on federal jurisdiction under the "basic theory . . . that only the United States Supreme Court has been given jurisdiction to review a state-court decision." 18B Charles Alan Wright et al., *Federal Practice and Procedure* § 4469.1 (2d ed. 2014). The Supreme Court observed in *Exxon Mobil* that lower federal courts have "sometimes . . . construed [the doctrine] to extend far beyond the contours of the *Rooker* and *Feldman* cases," and the Court clarified the narrow scope of the *Rooker–Feldman* doctrine. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). The *Rooker–Feldman* doctrine is confined to only those cases "[1] brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Id.* at 284. As the Third Circuit has observed, "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

Examining the second requirement—"injuries caused by state-court judgments"—in *Truong*, we explained that a "hallmark of the *Rooker–Feldman* inquiry is the source of the federal plaintiff's alleged injury." 717 F.3d at 382. "[I]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court," then, we said, "*Rooker–Feldman* bars subject matter jurisdiction in federal district court." *Id.* at 382–83. *Truong* approvingly discussed an unpublished Fifth Circuit opinion in which that panel held that *Rooker–Feldman* barred a claim that a state child-support order is void, but

---

[2] The doctrine is named for the two Supreme Court cases from which it is derived: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

not "a claim that state government defendants violated the federal plaintiffs' constitutional rights *in the course of enforcing the order.*" *Id.* at 383 (emphasis added) (discussing *Mosley v. Bowie Cnty., Tex.*, 275 F. App'x 327, 328–29 (5th Cir. 2008) (per curiam)).

Applying *Truong*, we hold that the district court erred in finding that most of Black's claims were barred by the *Rooker–Feldman* doctrine. Several of the claims merely deny the state court's legal conclusions but do not complain of injuries *caused* by the state-court judgment.

Nonetheless, many of Black's claims were correctly dismissed under *Rooker–Feldman*, and the application of *Rooker–Feldman* to these claims informs our discussion of those claims where federal jurisdiction is not barred. For instance, Black asserts that Shor converted Black's property and wrongfully executed the judgment by seizing that property pursuant to the state court's turnover order and, therefore, that Black is entitled to restitution. Under *Exxon Mobil* and *Truong*, we conclude that the source of the injury for the conversion, wrongful-execution, and restitution claims is the state-court judgment itself. The timing of the injury was when the Appellees took possession of property belonging to Black after obtaining the court orders. Thus, the timing indicates that the judgment itself was the source of these injuries. *See Great W. Mining*, 615 F.3d at 172 (observing that "[a] useful guidepost is the timing of the injury"). Further, the Appellees were acting under authority granted by the state court in seizing the assets from Black's businesses. Therefore, the district court correctly concluded that *Rooker–Feldman* bars federal-court review of the conversion, wrongful-execution, and restitution claims. *See Nesses v. Shepard*, 68 F.3d 1003, 1004 (7th Cir. 1995) ("[T]he *Rooker–Feldman* doctrine . . . [bars federal jurisdiction over] cases in which the defendant in the state court is seeking to undo a remedial order . . . ."). Similarly, the so-called "equitable estoppel and judgment forfeiture"

claims—i.e., that the "Shor parties" are "equitably estopped from asserting any claims under [the] judgment" arising from the $31 million arbitration award—essentially seek to undo a remedial order and are therefore barred by *Rooker–Feldman* as well.

In contrast, as in *Truong*, the claims alleging a conspiracy between the Appellees and the state-court trial judge in violation of § 1983 and Texas law not only attack the state-court proceedings, these claims also complain about the conduct of individuals in those proceedings. *See Nesses*, 68 F.3d at 1004–05 (concluding claim "that the [state-court] judge was a cat's paw of the winning party's lawyers" i.e., "that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics" was not barred by *Rooker–Feldman*). Thus, the timing of the injury was *before* the state court entered judgment. And unlike in the case of the conversion claim described above, none of the alleged conspirators was acting under the authority of the turnover orders in *seeking* to obtain a remedy.

The same can be said for the tortious-interference and abuse-of-process claims. Black alleges the Shor entities' *conduct in seeking* the judgment—not the judgment itself—tortiously interfered with the prospective and existing contractual rights of Black's businesses. As with the § 1983 claims, the timing of the injury was before the state court entered judgment. Similarly, Black's abuse-of-process claims are independent of the state-court judgment: the damages Black requested were for injuries caused by the Shor entities' allegedly fraudulent and conspiratorial actions, not injuries arising from the turnover order itself. *See Truong*, 717 F.3d at 383–84; *McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006) (holding that *Rooker–Feldman* did not deprive the court of subject matter jurisdiction over the plaintiff's abuse-of-process claims, reasoning that the "[p]laintiff asserts *independent*

*claims* that those state-court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means"). We pause to note that not all abuse-of-process and tortious-interference claims necessarily avoid *Rooker–Feldman* doctrine—particularly if the gravamen of the claim is the judgment itself, not the conduct of the defendants.[3] But it is also not dispositive that the claim denies a state-court judgment's underlying legal conclusion: "[I]ndependent claims may deny a legal conclusion of the state court . . . ; however, this fact does not lead to a divestment of subject matter jurisdiction in the federal courts. Instead, the Supreme Court has instructed that preclusion law is the appropriate solution for [such] independent claims." *Id.* at 392.

We also conclude that the federal Computer Fraud and Abuse Act (CFAA) claims under 18 U.S.C. § 1030(a)(2) are not barred by *Rooker–Feldman*. In *Truong*, we held that the Louisiana Unfair Trade Practices Act claims arose from the defendants' action in foreclosure proceedings in alleged violation of a separate set of substantive laws, not from the state-court judgment itself. 717 F.3d at 383. Similarly, the CFAA claims do not attack the state-court judgment; they complain about the Shor parties' violations of their independent legal obligations under the Act. Therefore, these claims were improperly dismissed as jurisdictionally barred by *Rooker–Feldman* as well.

Therefore, the district court erred by dismissing the § 1983 claims, the tortious-interference and abuse of-process claims, and the CFAA claims as jurisdictionally barred by *Rooker–Feldman*.

---

[3] For instance, an abuse-of-process claim complaining about no more than a creditor's good-faith (but novel) legal argument—successfully obtaining a state-court judgment that is ultimately overturned on appeal—in the absence of any allegations of fraud or other misconduct may not necessarily avoid a *Rooker–Feldman* bar.

No. 14-40259

Appellees cite, and the district court relied on, various unpublished Fifth Circuit decisions in which dismissals under *Rooker–Feldman* were affirmed. We decline to follow these unpublished decisions because they (1) were issued before *Truong* clarified Fifth Circuit case law after *Exxon Mobil* and (2) rely on pre-*Exxon Mobil* case law that gave independent meaning to the "inextricably intertwined" language from *Feldman*, 460 U.S. at 486, in contravention of the Supreme Court's recent admonition in *Exxon Mobil. See Truong*, 717 F.3d at 385 (recognizing that, after *Exxon Mobil*, the phrase "'inextricably intertwined' does not enlarge the core holding of *Rooker* or *Feldman*").

Therefore, we hold that the district court erred in dismissing the § 1983, CFAA, tortious-interference, and abuse-of-process claims as barred by *Rooker–Feldman*, and we vacate the subject-matter-jurisdictional dismissal of these claims. We affirm the district court's dismissal of the conversion, "equitable estoppel and judgment forfeiture," restitution, and wrongful-execution claims under *Rooker–Feldman*. We may affirm the dismissal of the remaining claims on the merits, however, if these claims could have been properly dismissed under Rule 12(b)(6). *See Sojourner T v. Edwards*, 974 F.2d 27, 30 (5th Cir. 1992) ("We can, of course, affirm the district court's judgment on any grounds supported by the record.").

**B.    Whether Black's Complaint States a Plausible Federal Claim**

As an alternative ground to support the district court's judgment of dismissal, Appellees argue that Black's complaint fails to state a claim under Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is "plausible on its face" only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* Although the complaint need not articulate "detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Black alleges that Shor's attorneys hired Defendant–Appellee Douglas Allison to improperly influence former County Court at Law Judge John Martinez into issuing the turnover orders that were eventually vacated and reversed on direct appeal. Black asserts that Judge Martinez "summarily signed [the proposed orders] as a result of improper *ex parte* communications among Judge Martinez and the Defendants, most notably Allison . . . ." Because Martinez, allegedly in league with Allison and Shor's other attorneys, failed to follow appropriate procedures, Black principally claims that the Black entities were deprived of their property without procedural due process of law, among other asserted claims discussed below.

### 1. Section 1983 Claims

We affirm the judgment of dismissal of Black's § 1983 claims on the merits because most of the Defendants are not plausibly alleged to have been state officials acting under color of state law. Section 1983 provides a remedy only if the deprivation of federal rights takes place "'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)). The state-action requirement is satisfied only if the following two elements are met: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible"; and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937.

No. 14-40259

"Private individuals generally are not considered to act under color of law" except in "certain circumstances, such as when a private person is involved in a conspiracy or participates in joint activity with state actors." *Ballard*, 413 F.3d at 518. A private person may qualify as a state actor "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id.* Private parties who, for instance, willfully conspire with and bribe a state-court judge to deprive a person of his constitutional rights are "acting under color of state law within the meaning of § 1983." *Dennis v. Sparks*, 449 U.S. 24, 27–29 (1980).

Defendants–Appellees argue that Black "did not make well-pleaded allegations of an agreement between Shor and Judge Martinez or any of the other numerous alleged government co-conspirators" and therefore cannot establish the state-action requirement. Plaintiffs–Appellants did not address this issue in their opening brief, nor did they file a reply brief.

Here, the conclusory allegations in Black's complaint fall short of plausibly pleading that the only state actor, Judge Martinez (who is not a party), participated in a conspiracy or joint activity with Shor's attorneys to deprive Black of his constitutional rights. As we held in *Richard v. Hoechst Celanese Chemical Group, Inc.*, "[i]f a judge reaches a decision based on misinformation that counsel provides, the issuance of the decision does not imply that counsel acted under color of state law." 355 F.3d 345, 353 (5th Cir. 2003). So too here. The factual allegations in the complaints as to Defendants–Appellees (except Allison) merely state that Judge Martinez acted on fraudulent documents submitted by Shor's attorneys without first holding an evidentiary hearing. As the intermediate appellate court noted in its decision reversing the turnover orders, "the turnover statute itself does not require notice and a hearing prior to issuance of a turnover order," though the court

11

ultimately decided that this was required. *Black*, 443 S.W.3d at 181. Thus, we affirm the dismissal of the § 1983 claims against Defendants–Appellees—except Black's claim as to Defendant–Appellee Allison, which we discuss below.

However, the complaint also reveals allegations that Defendant–Appellee Allison procured the forged signature of another state-court judge from Judge Martinez. This factual allegation is supported by handwriting exemplars. These allegations, taken together with the allegations that Allison made ex parte contact with Judge Martinez, supports the reasonable inference that Allison conspired with Judge Martinez to deprive Black and his related entities of their constitutional rights and thereby satisfies § 1983's state-action requirement.

Nonetheless, we affirm the judgment of dismissal as to Allison as well because Black fails to plausibly allege a constitutional deprivation. The main thrust of Black's allegations is that Texas's turnover statute is unconstitutional as applied in this case because it acted to deprive him of property without due process of law in violation of the Fourteenth Amendment. Specifically, Black complains the statute allowed the state court to deprive him of his "rights and property without notice, without [a] hearing, and without property valuation." Indeed, due process requires that notice and an opportunity to be heard "be granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted). But the trial court's interpretation of the Texas turnover statute—which allowed Shor to obtain Black's property without these procedural protections—was reversed on appeal for this reason. *See Black*, 443 S.W.3d at 181–82. Thus, Texas courts have not interpreted and applied the turnover statute in the way Black complains of and have afforded Black due process of law. Therefore, the complaint fails to state a claim under the Fourteenth Amendment.

No. 14-40259

### 2. *Computer Fraud and Abuse Act Claims*

We also affirm the judgment of dismissal of Black's Computer Fraud and Abuse Act claims on the merits. Black asserts that Shor violated the CFAA when, pursuant to the turnover orders, Shor seized computers that belonged to Black and obtained protected information from them. Shor argues that the district court's judgment of dismissal can be affirmed for the alternative reason that Black's complaints fail to state a claim under Rule 12(b)(6). We agree.

An essential element of a CFAA claim under 18 U.S.C. § 1030 is that the plaintiff accesses a computer "without authorization or exceeds authorized access." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 583–84 (5th Cir. 2015) (holding that "because [the defendant] did not exceed authorized access, he did not violate the Computer Fraud and Abuse Act"). Here, the state-court turnover orders authorized Shor to access the computers. Even though these orders were ultimately overturned, because Shor had authorization at the time pursuant a court order to access the computers, Black does not state a claim under the CFAA. *See id.* (dismissing CFAA claim, reasoning that the defendant accessed the computer while still employed at the plaintiff's company).

### 3. *Sherman Act Antitrust Claims*

The district court dismissed Black's Sherman Act claims under Rule 12(b)(6) for failure to state a claim. In their opening brief, Appellants do not specifically contest this ruling except to argue in a general and conclusory manner that their "factual allegations make it more than facially plausible that Appellee/Defendant Allison was knowingly engaged in a conspiracy to deprive Black of his assets and rights," and that, "[a]ccordingly, the *Twombly* standard was met and sufficient pleading of conspiratorial conduct exists to support an antitrust claim . . . ."

Black's antitrust claims were properly dismissed. As the district court observed, Black's complaint describes Defendant–Appellee Allison's alleged

skullduggery in procuring the state-court turnover order—which has nothing to do with antitrust law. As the Supreme Court held in *Twombly*, to state a claim under § 1 of the Sherman Act, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to survive a motion to dismiss. 550 U.S. at 556. Because Black's complaint does not include factual allegations of anticompetitive conduct or an agreement in restraint of trade, the district court properly dismissed these claims.

## C.    Remaining State-Law Claims

Having dismissed the federal claims either on the merits or for lack of subject-matter jurisdiction under *Rooker–Feldman*, the district court declined to continue to exercise subject-matter jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367(c)(3). As discussed above, *see supra* Part III(A), the district court incorrectly found the abuse-of-process and tortious-interference state-law claims to be barred by *Rooker–Feldman*, and Appellees urge us to affirm dismissal of these claims on the merits.

Because we affirm the district court's dismissal of all of the federal claims for lack of jurisdiction under *Rooker–Feldman* or for failure to state a claim under Rule 12(b)(6), we  decline to address the merits of the remaining state-law claims for the first time on appeal. *See Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) ("[O]ur 'general rule' is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial . . . ."). Instead, we vacate the district court's dismissal of the abuse-of-process and tortious-interference and remand so the district court can determine whether the exercise of supplemental jurisdiction is warranted and, if necessary, conduct appropriate proceedings incidental to that discretionary determination. *See Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010).

No. 14-40259

## IV. CONCLUSION

For the foregoing reasons, we MODIFY the judgment of the district court to reflect a dismissal on the merits, rather than for lack of subject matter jurisdiction under *Rooker–Feldman*, of the § 1983 claims and the CFAA claims. We VACATE the judgment of dismissal of the abuse-of-process and tortious-interference state-law claims, and we REMAND for the district court to consider whether the continued exercise of supplemental jurisdiction is warranted. We AFFIRM the judgment of dismissal of the conversion, wrongful-execution, restitution, and so-called "equitable estoppel and judgment forfeiture" claims for lack of subject-matter jurisdiction as barred by *Rooker–Feldman*.